UNITED STATES of America,
Plaintiff–Appellee,

v.

Ernest ALEXANDER, Defendant–
Appellant.

No. 95–1961.

United States Court of Appeals,
Sixth Circuit.

Argued April 17, 1996.

Decided July 10, 1996.

Michael R. Carithers, Jr. (argued and briefed), Office of the U.S. Attorney, Detroit, MI, for Plaintiff–Appellee.

Richard M. Helfrick (argued and briefed), Federal Public Defenders Office, Detroit, MI, for Defendant–Appellant.

Before: ENGEL, SUHRHEINRICH, and COLE, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

Section 2B3.1(b)(2)(F) of the United States Sentencing Guidelines permits a two-level enhancement to the base offense level of 20 for robbery under U.S.S.G. § 2B3.1(a) if an "express threat of death" is made during the course of the robbery.  The sole question in

this case is whether the enhancement applies if the defendant indicates merely that he has a bomb and a gun. The district court held that it did. We reverse.

## I.

Defendant Ernest Alexander committed five bank robberies in 1994.[1] The first, took place on February 11, 1994, at the National Bank of Detroit ("NBD") in the General Motors Building in Detroit, Michigan. Defendant handed a teller a demand note which read: "I'VE A BOMB IN MY CASE AND A GUN. STAY CALM DON'T TRIP YOUR ALARM AND HAND OVER THE 100, 50, 20, 10, NO ONE WILL BE HARM." Defendant received $1,541 in federally insured funds.

The second bank robbery occurred on April 25, 1994, at the NBD office on McNichols Street in Detroit. Defendant passed to a teller a demand note which stated: "STAY CALM DON'T HIT YOUR ALARM NO ONE WILL BE HURT HAND OVER THE 100, 50, 20, 10. BE QUICK." Defendant was handed $1,630 in federally insured funds before fleeing.

On June 23, 1994, defendant committed the third robbery, returning to the NBD office in the General Motors building. He presented a demand note to a teller which read: "DON'T LOOKUP JUST DO EXACTLY AS I SAY, NO ONE WILL GET HURT GIVE ME THE $100, 50, 20, 10 AND BE QUICK."

Defendant returned to the McNichols branch of NBD on September 27, 1994. This time defendant's demand note stated: "FOLLOW MY INSTRUCTION EXACTLY NO ONE WILL GET HURT GIVE ME THE $100, $50, 20, 10 HURRY UP DON'T DO ANYTHING FOOLISH THAT YOU'LL REGRET!" Defendant was given $674 in federally insured funds. The monies contained a dye pack which exploded when defendant fled.

An information was filed on April 11, 1995, charging defendant with four counts of bank robbery in violation of 18 U.S.C. § 2113(a). Defendant pled guilty to all four counts. The Rule 11 plea agreement provided that the

parties disagreed as to whether two points should be added to the base offense level for an express threat of death, and left the matter for resolution by the district court at sentencing. With the enhancement, defendant's total offense level was 28, resulting in a sentencing guideline range of 63 to 78 months. Without the enhancement, defendant's sentencing guideline range would be 51 to 63 months. The parties set an upper limit of 70 months incarceration.

At sentencing, the district court ruled in the government's favor, stating: "I've been cursed with a logical mind, and I always apply common sense. And to me, saying that I've got a bomb in my case and a gun certainly implies a threat of death to this Court." The district court determined that the 63 to 78 months guideline range was appropriate and sentenced defendant to 70 months imprisonment. Defendant appeals.

## II.

Section 2B3.1(b)(2)(F) provides that if, during the commission of a robbery, "an express threat of death was made, increase by 2 levels." U.S.S.G. § 2B3.1(b)(2)(F)(Nov. 1994). Defendant argues that the two-point enhancement was improper because none of the four demand notes used the words "kill," "die," or "death." Defendant maintains that, at most, each note contained an implied threat to harm or hurt if the demand was not met. We review this issue of guideline interpretation de novo. See United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991)(stating that question whether defendants' conduct qualified as conduct covered under guideline section for obstruction of justice "'turns primarily on the legal interpretation of a guideline term' and is thus reviewed de novo").

A number of circuits have adopted a view of § 2B3.1(b)(2)(F) similar to that of the district court in this case. That is, they refuse to view the guideline restrictively, and allow the enhancement where a direct implication of death follows from the defendant bank robber's statement even though the defendant has not stated that he intends to

---

**1.** Defendant was not charged with the bank robbery committed on September 15, 1994.

kill the teller absent cooperation. *See, e.g., United States v. Murray*, 65 F.3d 1161, 1166–67 (4th Cir.1995)(concluding that a threat to shoot a firearm at a person during a robbery, created by an combination of threats or gestures that would put ordinary victim in reasonable fear of his life is express threat of death); *United States v. France*, 57 F.3d 865, 866–68 (9th Cir.1995)(adopting view of other circuits that statements and other conduct may constitute express threat of death in absence of robber's explicit threat to kill victim); *United States v. Hunn*, 24 F.3d 994, 997 (7th Cir.1994) (rejecting restrictive reading of guideline); *United States v. Robinson*, 20 F.3d 270, 276–77 (7th Cir.1994)(holding without detailed exposition that "I have a gun and am not afraid to use it" warranted enhancement); *United States v. Lambert*, 995 F.2d 1006, 1008 (10th Cir.)(stating without detailed discussion that robber's statement to teller to put money in bag or "the person behind me will shoot someone" is considered an express threat under the guidelines, citing the commentary), *cert. denied*, 510 U.S. 926, 114 S.Ct. 333, 126 L.Ed.2d 278 (1993); *United States v. Smith*, 973 F.2d 1374, 1378 (8th Cir.1992)(concluding that combination of threatening teller with statement "You don't want to find out" and appearance as if he had gun under his coat constituted express threat of death); *United States v. Strandberg*, 952 F.2d 1149, 1151 (9th Cir.1991)(holding that "[s]ection 2B3.1(b)(2)(F) does not require that the defendant state that he intends to kill the teller if his demands are not met").

In so ruling, these courts have looked to the commentary to § 2B3.1(b)(2)(F), which provides:

An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", Give me the money or I will shoot you, "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

U.S.S.G. § 2B3.1, comment. (n. 6) (Nov. 1994). The cases have relied on both the examples provided, *see, e.g., Murray*, 65 F.3d at 1166 (finding that "I have a gun pointed at you" is practically indistinguishable from the commentary example, "Give me the money or I will shoot you"); *France*, 57 F.3d at 867 (finding that statement "I have dynamite" would create same amount of fear as grenade example in commentary); *Hunn*, 24 F.3d at 997 (relying on commentary example "give me your money or else (where the defendant draws his hand across his throat in a slashing motion)" to hold that robber's pointing of his hand hidden in a coat so as to imitate presence of handgun aimed at another, qualified for enhancement), and the statement of guideline intent. *See, e.g., Murray*, 65 F.3d at 1166 n. 3 ("crucial determination … is whether a reasonable victim would fear for his or her life because of the robber's actions") and 1167 (threat to shoot created by combination of words or actions that "would put an ordinary victim in reasonable fear for his or her life, is an express threat of death"); *France*, 57 F.3d at 866–67 ("[w]hat is determinative is whether a reasonable person, given the conduct of the defendant and the context in which it occurred, would experience significantly greater fear than the level of intimidation necessary to constitute an element of the offense of robbery"); *Robinson*, 20 F.3d at 276 (stating that "court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery"); *Smith*, 973 F.2d at 1378 (holding that robber's statement and

gestures "instilled greater fear than necessary to carry out the robbery").

Although we agree that the commentary, by its illustrations, supports the holdings in these cases, our concern is more fundamental: We believe that the commentary is, for the most part, inconsistent with the guideline itself, which unequivocally states that the "threat of death" must be "express." The Eleventh Circuit has already come to this conclusion, as well as Judge Easterbrook of the Seventh Circuit and Judge Arnold of the Eighth Circuit. *See Hunn,* 24 F.3d at 999–1000 (Easterbrook, J., dissenting); *United States v. Cadotte,* 57 F.3d 661, 662 (8th Cir. 1995)(per curiam) (Arnold, J., dissenting), *cert. denied,* —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 733 (1996).

In *United States v. Tuck,* 964 F.2d 1079 (11th Cir.1992), the Eleventh Circuit observed that § 2B3.1(b)(2)(F)

> predicates the application of the enhancement on two factors. First, the threat must be express. Webster's Third New International Dictionary (1976) defines "express" as "Directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous: definite, clear, explicit, unmistakable." Second, the threat must be of death, or activity that would cause the victim to be in reasonable apprehension of his or her life.

*Id.* at 1080–81. The court therefore found that the defendant's threat that "if she did anything funny he would be back" was not an express threat of death because it merely implied physical harm or death, and "was simply not direct, distinct, or express." *Id.* at 1081. The *Tuck* court declined to read the commentary broadly, noting that it does not have the force of law.[2] *See also United States v. Moore,* 6 F.3d 715, 721–22 (11th Cir.1993)(holding that threat "I HAVE A GUN AND NOTHING TO LOSE" was not an express threat of death because there was not express mention of death and could also be interpreted to mean that robber was desperate and willing to turn alleged gun on

himself): *United States v. Canzater,* 994 F.2d 773, 775 (11th Cir.1993)(per curiam)(holding that "I have a gun, give me money" may imply threat to use gun, but was not an express threat of death).

Similarly, Judge Easterbrook, dissenting in *Hunn,* remarked:

> The Sentencing Commission set out to distinguish degrees of threats. Saying that you have a gun does not invariably induce a fear of death. To separate ordinary references to guns, and the apprehension they produce, from the terror that a threat of death yields, the Sentencing Commission provided that only an "express threat of death" justifies the two-level increase. An implication from words and gestures is not enough. Only what the bandit says or conveys in signs, not what the victim reads into shadings of "I have a gun," is an "express" threat. Anything else dissolves the difference between posturing and genuine threats of death.

> The majority believes that this is a "cramped" reading of the Guidelines. So it would be, if the function of § 2B3.1(b)(2)(F) were to distinguish bona fide threats from idle chatter. Hunn's notes, words, and gestures would have created fear in reasonable persons. But putting the victim in fear is an element of the crime of robbery, *see United States v. Ray,* 21 F.3d 1134 (D.C.Cir.1994), and using ordinary degrees of fear for enhancement is double counting. Instead the Sentencing Commission's objective was to separate the sort of fear that accompanies most bank robberies from the panic that accompanies an express threat of death: "The . . . intent of the underlying provision is to provide for an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery." U.S.S.G. § 2B3.1 application

---

**2.** Curiously, the Ninth Circuit relied on this reasoning in *United States v. France,* 57 F.3d 865 (9th Cir.1995) as a basis for rejecting the Eleventh Circuit's view. The *France* court noted that *Tuck* was decided prior to *Stinson v. United*

*States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), and was therefore somehow unpersuasive on this issue. *France,* 57 F.3d at 867. However, we think *Tuck* is entirely consistent with the mandate of *Stinson.*

note 6 (emphasis added). A literal reading of the Guideline then is not "cramped" but is the only way to ensure that the text serves its function.

Threats lie along a continuum of seriousness and gravity. Yet the Sentencing Commission did not compose a multi-factor approach or ask the courts to balance objectives. It created a dichotomy between "express" and "implied" threats of death.... [F]eigning is ordinary for a bank robbery. It may have placed the teller in fear of harm, but harm is not death, and an inference from the announcement of a weapon is not an "express" threat. The application note shows that the Sentencing Commission believes that a conditional threat can be "express"; if, as the majority holds, an implied conditional threat also qualifies, then "express" has been read out of the Guideline.

*Id.* at 999–1000 (Easterbrook, J., dissenting). *See also Cadotte,* 57 F.3d at 662 (Arnold, J., dissenting)("If the word 'express' is to be accorded any meaning at all, I do not think that [the defendant's statement that he had a .357 magnum and that no one would get hurt if she put the money in the bag] can reasonably be said to constitute an 'express threat of death,' U.S.S.G. § 2B3.1(b)(2)(F). What was conveyed here was, at most, an implicit threat of serious bodily injury or death.").

 We agree with the reasoning of the Eleventh Circuit, and views of Judges Easterbrook and Arnold that to satisfy the qualifier "express," a defendant's statement must distinctly and directly indicate that the defendant intends to kill or otherwise cause the death of the victim.[3] Because four of the five examples in Application Note 6 do not, they are not controlling. *See Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)(holding that commentary in sentencing guidelines that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute or unless it is plainly erroneous or inconsistent with the guideline it interprets). Similarly, reliance on the commentary's statement regarding the underlying intent of the guideline is unavailing if it leads to a deter-

mination that does not conform with the guideline itself. We therefore reject the view of the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits. We acknowledge that the district court's "common sense" view of the guideline is just that, but we are constrained by the mandate of *Stinson* and its straightforward application in this case.

Applying this rule to each of defendant's four demand notes, we find that none warrants the two-point enhancement of § 2B3.1(b)(2)(F). We therefore reverse this aspect of the district court's sentencing determinations and vacate defendant's sentence.

### III.

The ruling of the district court is **RE-VERSED**, defendant's sentence is **VACAT-ED**, and the matter is **REMANDED** for resentencing not inconsistent with this opinion.

---

**3.** We express no opinion as to factual scenarios not before us, such as gestures.