

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-1997

# United States v. Figueroa

Precedential or Non-Precedential:

Docket 96-1421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Figueroa" (1997). *1997 Decisions.* Paper 23.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/23

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 96-1421

_____

UNITED STATES OF AMERICA

v.

JUAN FIGUEROA,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 95-00504)

_____

Submitted under Third Circuit LAR 34.1(a)
December 10, 1996

BEFORE:  BECKER, MANSMANN, and GREENBERG, Circuit Judges

(Filed: January 30, 1997)

_____

Michael R. Stiles
United States Attorney
Robert R. Calo
Assistant United States Attorney
Walter S. Batty, Jr.
Assistant United States Attorney
Chief of Appeals
615 Chestnut Street
Philadelphia, PA 19106

Attorneys for Appellee

Mark D. Mungello
103 LaCosta Drive
Blackwood, NJ 08012

Attorney for Appellant

_____

OPINION OF THE COURT

_____

GREENBERG, Circuit Judge.

1

Appellant Juan Figueroa appeals from the sentence imposed by the district court after he pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a). Figueroa argues that the district court erred by enhancing his offense level by two levels for an express threat of death under United States Sentencing Guideline § 2B3.1(b)(2)(F). We will affirm and hold that a written statement Figueroa presented to a bank teller during the robbery informing the teller that he possessed a gun constituted an express threat of death and subjected him to a 2-level enhancement under section 2B3.1(b)(2)(F).

## 1. Jurisdiction and Standard of Review

Figueroa was indicted for violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2, and thus the district court had subject matter jurisdiction over this prosecution. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). A defendant may appeal a sentence imposed by a district court if the sentence "was imposed in violation of law [or] was imposed as a result of an incorrect application of the sentencing guidelines. . . ." 18 U.S.C. § 3742(a)(1) and (2). We exercise plenary review over the district court's interpretation and application of the Sentencing Guidelines. United States v. Hallman, 23 F.3d 821, 823 (3d Cir.), cert. denied, 115 S.Ct. 216 (1994). If, however, the district court's application of the Guidelines was based on factual analysis, we will reverse for clear error only. Id. In this case we regard the issue as

2

involving the interpretation and application of the Guidelines so we exercise plenary review.

## 2. Background

On April 24, 1995, Figueroa entered the Meridian Bank at 1470 East High Street in Pottstown, Pennsylvania, and approached a bank teller. His co-defendant, Marcellus Hammond, waited in a car outside the bank. Figueroa gave a note written by Hammond on a white napkin to the teller which read "I have a gun. Give me all the money." The note had some other writing to the effect that Figueroa needed a bag for the money. The teller gave Figueroa $2,379.00, and Figueroa left the bank.

On September 14, 1995, a grand jury indicted Figueroa for committing robbery against Meridian Bank in violation of 18 U.S.C. § 2113(a) and 18 U.S.C. § 2. Figueroa entered a plea of guilty to violation of 18 U.S.C. § 2113(a) on October 5, 1995. On May 16, 1996, the district court sentenced Figueroa to 40 months imprisonment, five years supervised release, a $50.00 special assessment, and $2,379.00 in restitution. At the sentencing, Figueroa objected to the section 2B3.1(b)(2)(F) 2-level enhancement for an express threat of death. On May 20, 1996, Figueroa filed this appeal.

## 3. Discussion

U.S.S.G. § 2B3.1 provides that the base offense level for robbery is 20. Subsection (b) then lists several offense characteristics for which the court should apply specific

enhancements.  Under section 2B3.1(b)(2)(F), "if an express threat of death was made [during the commission of the offense], increase by 2 levels."  The commentary to the Guidelines further explicates, through illustration, the meaning of "express threat of death":

> An 'express threat of death,' as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof.  For example, an oral or written demand using words such as 'Give me the money or I will kill you', 'Give me the money or I will pull the pin on the grenade I have in my pocket', 'Give me the money or I will shoot you', 'Give me the money or else (where the defendant draws his hand across his throat in a slashing motion)', or 'Give me the money or you are dead' would constitute an express threat of death.  The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

This commentary is binding on a court unless it violates the Constitution or a federal statute, is inconsistent with the guideline, or clearly misinterprets the guideline.  Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915 (1993).  In this case none of these exceptions applies, so the commentary is binding and this appeal turns on our application of it.

Figueroa argues that he should not be subjected to the 2-level enhancement of section 2B3.1(b)(2)(F) because his written note merely stated that he possessed a gun, but did not contain any threat to use the gun.  He contends that "the comments and the caselaw construing this Section all require something more than a single statement or communication that the actor is in

4

possession of a weapon; [Figueroa's] position is that there must be, at a minimum, some words or physical gestures from which it could be reasonably inferred by the victim that the Defendant intends to actually use his weapon in the event that the victim fails to comply with the actor's directive."  Br. at 4.

In response, the Government argues that the statement "I have a gun" is an express threat of death because the reasonable inference to be drawn from that statement is that the person will use the gun if his demands are not satisfied.  The Government argues further that by informing the teller he had a gun, Figueroa "instilled significantly greater fear [in the teller] than would have occurred had he merely made a demand for money, which is the only act necessary to satisfy the element of a taking by force, violence, and intimidation."  Br. at 7-8.  For these reasons, the Government contends that Figueroa's conduct qualifies as an express threat of death, subject to a 2-level enhancement.

The application of section 2B3.1(b)(2)(F) presents a question of first impression in this court.  However, we are guided by the opinions of other courts of appeals.  As in the examples presented in the commentary, in none of these cases are the facts exactly like those in this case, but the principles they enunciate persuade us that Figueroa's statement that he had a gun was an "express threat of death" within the meaning of section 2B3.1(b)(2)(F).

The majority of the courts of appeals which have interpreted and applied section 2B3.1(b)(2)(F) have held that the

defendant can make an express threat of death without explicitly threatening to kill the victim.  Their reasoning has turned on a reading of the word "express" combined with adherence to the commentary's instruction to consider the reasonable perceptions of the recipient of the threat.  For example, one court has explained that "express" need not be read as meaning distinct or explicit, but rather also can be interpreted reasonably as "clear."  United States v. Robinson, 86 F.3d 1197, 1200 (D.C. Cir. 1996) (citations omitted).  Defining "express" to mean "clear" has enabled the courts to focus on the reasonable implications of, and inferences from, the defendant's words or actions.  Id. at 1203.[1]  The courts thus have concluded that an "express threat need not be specific in order to instill the requisite level of fear in a reasonable person."  United States v. France, 57 F.3d 865, 868 (9th Cir. 1995) (citation omitted).

The Court of Appeals for the Fourth Circuit has emphasized that the "crucial determination. . . is whether a

---

[1] The Court of Appeals for the District of Columbia Circuit explained in Robinson that it believed its interpretation of section 2B3.1(b)(2)(F) to be stricter than that of the Courts of Appeals of the Eighth and Ninth Circuits as set forth in United States v. Cadotte, 57 F.3d 661, 662 (8th Cir. 1995), cert. denied, 116 S.Ct. 783 (1996), and United States v. Strandberg, 952 F.2d 1149, 1151 (9th Cir. 1991).  Robinson, 86 F.3d at 1203.  The Court of Appeals for the District of Columbia Circuit felt that those courts focused too narrowly on the victim's perception and thereby ignored the requirement that the threat be "express," however defined.  Id.  We are not forced to choose between these formulas, but we do not agree that the guideline's requirement that the threat be express has been discarded by the Courts of Appeals for the Eighth and Ninth Circuits.  Instead, they have molded what the Court of Appeals for the District of Columbia Circuit views as two factors, that there be an express threat and that it is reasonable for the victim to infer his life is in danger, into one inquiry.

reasonable victim would fear for his or her life because of the robber's actions." United States v. Murray, 65 F.3d 1161, 1166 n.3 (4th Cir. 1995). Similarly, the Court of Appeals for the Ninth Circuit has explained that what "is determinative is whether a reasonable person, given the conduct of the defendant and the context in which it occurred, would experience significantly greater fear than the level of intimidation necessary to constitute an element of the offense of robbery." France, 57 F.3d at 866-67 (citing United States v. Strandberg, 952 F.2d 1149, 1151 (9th Cir. 1991)) (footnote omitted). These courts therefore have found that statements that defendants possessed weapons or would shoot, as well as gestures simulating the appearance of a gun, are express threats of death within the meaning of section 2B3.1(b)(2)(F). See Robinson, 86 F.3d at 1202 (defendant's statements that he would shoot someone if not given the money constituted express threats of death because they reasonably could be interpreted as threats to kill); France, 57 F.3d at 867-68 (defendant's statement that he had dynamite qualified as express threat of death); Murray, 65 F.3d at 1167 (defendant's statement "I have a gun pointed at you" constituted express threat of death); United States v. Hunn, 24 F.3d 994, 997 (7th Cir. 1994) ("a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, can be a sentence-enhancing, death threat expression"); United States v. Lambert, 995 F.2d 1006, 1008 (10th Cir.) (instruction to teller to put money in the bag or "'the person behind me will shoot someone'" is an express threat of death), cert. denied, 510 U.S. 926, 114

7

S.Ct. 333 (1993); United States v. Smith, 973 F.2d 1374, 1377-78 (8th Cir. 1992) (defendant's statement that teller would not want to find out if defendant's demand for money was a joke, combined with defendant's holding his hand under his coat as if holding a gun, qualified for section 2B3.1(b)(2)(F) enhancement); United States v. Strandberg, 952 F.2d, 1149, 1151-52 (9th Cir. 1991) (statement to teller that if she pulled alarm defendant's "friend would start shooting" constituted express threat of death). These courts often have focused their attention on how a reasonable victim would be affected by the threat.

It appears that only the Courts of Appeals for the Eleventh and Sixth Circuit have applied a stricter definition of "express threat of death." The Court of Appeals for the Eleventh Circuit has held that "the threat must be directly and distinctly stated or expressed rather than implied or left to inference, and the threat 'must be of death, or activity that would cause the victim to be in reasonable apprehension of his or her life. . . .'" United States v. Moore, 6 F.3d 715, 721-22 (11th Cir. 1993) (citation omitted) (holding that statement that defendant had a gun and nothing to lose was not an express threat of death).[2] The

_____

[2] In Moore, the court relied in part on United States v. Tuck, 964 F.2d 1079 (11th Cir. 1992). In Tuck, the court found that the commentary's reference to the fear instilled in the victim by the threat was potentially inconsistent with the guideline and, in any event, not binding upon the court. Tuck, 964 F.2d at 1081. The Tuck court reconciled the commentary and guideline by reading the commentary as applying the enhancement "only to defendants who have engaged in conduct that would instill in the victim a reasonable fear for his or her life." Id. Stinson overrules Tuck to the extent Tuck held that the guidelines should be interpreted like legislative history. This flaw does not in itself undermine the Court of Appeals for the Eleventh Circuit's reasoning, because in later cases, such as Moore, the court did

8

Court of Appeals for the Sixth Circuit recently has adopted the reasoning of the Court of Appeals for the Eleventh Circuit to hold that "to satisfy the qualifier 'express,' a defendant's statement must distinctly and directly indicate that the defendant intends to kill or otherwise cause the death of the victim." United States v. Alexander, 88 F.3d 427, 431 (6th Cir. 1996) (footnote omitted).

We reject the Court of Appeals for the Eleventh Circuit's definition of "express threat of death" as too narrow. See also Hunn, 24 F.3d at 997 (finding the Court of Appeals for the Eleventh Circuit's reading of section 2B3.1(b)(2)(F) "unnecessarily cramped"); France, 57 F.3d at 868 (same). Reading "express" as "clear," as the Court of Appeals for the District of Columbia Circuit suggests, reconciles the text of section 2B3.1(b)(2)(F) with the accompanying commentary. Robinson, 86 F.3d at 1200. If the word "express" were read to require an explicit, precise statement of a defendant's intent to kill, the commentary's direction to analyze the perception of the victim would be undermined.

Moreover, the Court of Appeals for the Eleventh Circuit's interpretation of the guideline could result in disparate sentences for defendants who commit the same crimes. Under its reasoning, a defendant could escape the effect of section 2B3.1(b)(2)(F) because of his brevity or random choice of

consider whether the robber's threat reasonably would instill greater fear in the victim than the robbery alone (without the threat) would have.

9

words; that is, he could avoid the 2-level enhancement simply because he wrote a shorter note or spoke less than another defendant, choosing only to announce that he would shoot the victim rather than threaten to kill the victim. In the calmer atmosphere of a sentencing colloquy, the different wordings may seem significant; however, in the tense environment of a bank robbery, the differences are truly only semantic and negligible. It would be reasonable for the teller who is the target of a bank robbery to interpret "I will shoot you" and "I will kill you" as identical statements indicating that the teller's life is in jeopardy. We believe that Moore seized on a distinction without a difference, and in light of the commentary's direction to consider the effect of the threat upon the reasonable victim, we find the reasoning of the Courts of Appeals for the Fourth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits more persuasive.

We recognize that most of the cases we have cited involved a more detailed statement than an announcement such as that here that the defendant possessed a weapon. Yet there are cases where courts have held that such a possessory statement, accompanied by little else, is sufficient to qualify for the section 2B3.1(b)(2)(F) enhancement. The Court of Appeals for the Eighth Circuit has held that a defendant who told a bank teller who did not accede immediately to his demands that he had a .357 magnum in his pocket and no one would be hurt if she gave him the money was subject to a section 2B3.1(b)(2)(F) enhancement. United States v. Cadotte, 57 F.3d 661 (8th Cir. 1995), cert.

10

denied, 116 S.Ct. 783 (1996). In France, the court held that a robber's statement that he had dynamite constituted an express threat of death, although the court expressly refused to determine whether section 2B3.1(b)(2)(F) would apply to a defendant who stated he had a gun. France, 57 F.3d at 865-68.

In this case, Figueroa presented a written note to the teller that stated he had a gun but he did not communicate any explicit intention to use the weapon.[3] However, it is not unreasonable for a bank teller, confronted by a robber demanding money, and, as here, claiming to have a gun, to fear that his or her life is in danger. During the sentencing colloquy, the district court imagined aloud how a bank teller would perceive this situation:

> I think the purpose of this was, I think to allow an enhancement where a reasonable person felt by looking at the person in the eye, normally in this situation, as well, the wrongdoer is very close to the teller. You go to a bank, the counter is there, the glass is there, sometimes the teller is as close as 24, 30 inches away. So you put all of these things together, the person's head and the top part of the body is looking at a person 24 inches away or so with a gun, it seems to me, that is the sort of a thing that would place a reasonable person in fear of this, a death threat, that would seem so to me. . . . [H]ere is a person, eyeball to eyeball, that close, that says, I have a gun, give me the money. I think that's what it is for.

---

[3] In fact, Figueroa claims that he did not have a gun at the time of the robbery, and this claim appears to be uncontested. Br. at 2. However, this fact does not affect the applicability of section 2B3.1(b)(2)(F). See, e.g., United States v. Jones, 83 F.3d 927, 929 (7th Cir. 1996) ("But the fact that he may have actually been unarmed is of no consequence provided he instilled in the tellers significantly greater fear than that necessary to constitute an element of the offense of robbery.") (internal quotation marks omitted); Murray, 65 F.3d at 1167; Hunn, 24 F.3d at 997 n.5; Cadotte, 57 F.3d at 662.

App. at 16-17.  A teller confronted by a robber is in a tense and frightening situation; moreover, once a weapon is introduced, the level of fear intensifies.  "If a person robbed a bank by delivering a note to a teller stating something like 'give me the money and keep your mouth shut,' an enhancement would be inappropriate.  But once a robber starts embellishing -- 'I have a gun -- I'm not afraid to use it -- don't pull any alarms' -- he's asking for an enhancement under the guidelines because those sorts of comments place a teller, who is seriously vulnerable, in a position of enhanced fear."  Jones, 83 F.3d at 929.

The Government argues that common sense dictates that the inference to be drawn from a statement that a robber possesses a gun is that he is willing to use it.  Br. at 7.  This is a logical inference, and one that a reasonable recipient of the statement likely would draw.  The Court of Appeals for the Fourth Circuit has held that a robber's statement that she has a gun pointed at the teller is tantamount to threatening to shoot the teller.  Murray, 65 F.3d at 1167; see also Robinson, 86 F.3d at 1202.

We think that the logic of those cases applies here.  When a robber announces, by word or by action, that he possesses a gun, he also is communicating to the reasonable victim his intention to use that weapon.  After all, what is the purpose of announcing the presence of the weapon other than to convey to the victim that the weapon will be used unless the victim complies with the robber's demands?  Surely the robber does not announce that he has a weapon for his own defense.  Even if there is no

12

gun, or if the defendant actually never would use the gun, the victim alerted that there is a gun is justified in believing it exists and will be used, and that his or her life is therefore in danger. The commentary to section 2B3.1(b)(2)(F) has directed our attention to the reasonable belief of the victim, and we find it is reasonable for a bank teller to interpret a defendant's statement of possession of a gun as a threat to his or her life.

Our interpretation of section 2B3.1(b)(2)(F) is also consistent with the underlying purpose of the Guidelines: to create a more systematic and equitable sentencing scheme. A defendant might find simply announcing the existence of the weapon sufficiently effective to cause the victim bank teller to act quickly and quietly. If section 2B3.1(b)(2)(F) applies only to the defendant who explicitly communicates his intention to use the weapon if necessary, the result will be disparate sentences for defendants who have committed the same crime using the same means but who have differed in their verbosity or articulateness. The commentary directs our attention to the perspective of the victim for a reason; it is the effect of the threat, not its actual wording, which triggers the 2-level enhancement under section 2B3.1(b)(2)(F).

The note Figueroa presented to the bank teller stating that he wanted the money and that he had a gun, reasonably would have been perceived by the teller as communicating Figueroa's intention to use the weapon. The teller therefore reasonably would have believed that Figueroa endangered her life. Figueroa's

13

statement constituted an express threat of death subject to a 2-level enhancement under § 2B3.1(b)(2)(F).

While we do not doubt that our result is correct under section 2B3.1(b)(2)(F) and the commentary as it is now written, we take note of the circumstance that the United States Sentencing Commission has proposed an amendment to the commentary to make clear that the Commission's intent has been in accord with the majority position we now are joining:

> This amendment adopts the majority view and clarifies the Commission's intent to enhance offense levels for defendants whose intimidation of the victim exceeds that amount necessary to constitute an element of a robbery offense. The amendment deletes the reference to 'express' in § 2B3.1(b)(2)(F) and provides for a two-level enhancement 'if a threat of death was made'.

Proposed Amendment to the Federal Sentencing Guidelines, 60 Crim. L. Rep. (BNA) 2019, 2035 (Jan. 15, 1997). Inasmuch as we never before have addressed the application of section 2B1.3(b)(2)(F) and the majority of the courts of appeals already have adopted the position taken by the Commission in the clarifying amendment, it is entirely appropriate for us to consider the amendment as further support for our holding. See United States v. Bertoli, 40 F.3d 1384, 1404-06 (3d Cir. 1994); United States v. Ofchinick, 877 F.2d 251, 257 n.9 (3d Cir. 1989).

4. Conclusion

U.S.S.G. § 2B3.1(b)(2)(F) applies to a defendant who announces in the course of a robbery, either by word or action, that he has a gun. Figueroa is thus eligible for the 2-level

enhancement under section 2B3.1(b)(2)(F). Accordingly, the district court properly applied and construed section 2B3.1(b)(2)(F) when sentencing Figueroa. Therefore, we will affirm the judgment of conviction and sentence of May 16, 1996.

UNITED STATES OF AMERICA v. JUAN FIGUEROA, No. 96-1421

BECKER, Circuit Judge, dissenting.

                              I.

        The majority concludes that the defendant's statement to a bank teller -- "I have a gun; give me all the money" -- constituted an "express threat of death" so as to justify a two-level increase above the base offense level for robbery under the Sentencing Guidelines. See 1995 U.S.S.G. § 2B3.1(b)(2)(F). In contrast to the majority -- which spins out an intricate

15

explanation for this counter-intuitive holding -- I think the case is very simple.

The majority rests its holding on the last sentence of the relevant Guideline Commentary, which reads:

> The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

Id. § 2B3.1, comment., application note 6. The language in the Commentary appears to allow an increase above the base offense level if there is any threat of death, express or implied. However, that Commentary is not binding on the court if it is inconsistent with the Guideline or if it clearly misinterprets the Guideline. See Stinson v. United States, 113 S. Ct. 1913, 1918 (1993) ("If, for example, commentary and the guideline it interprets are inconsistent in that following one will result in violating the dictates of the other, the Sentencing Reform Act itself commands compliance with the guideline."). I believe that the Commentary at issue is either inconsistent with or clearly misinterprets the relevant Guideline text, which provides:

> if an express threat of death was made [during the commission of the robbery], increase by 2 levels.

1995 U.S.S.G. § 2B3.1(b)(2)(F) (emphasis added).

The Guideline itself, then, allows the increase only if the threat is express. Therefore, as I understand Stinson, only an express threat of death will satisfy § 2B3.1(b)(2)(F),

regardless of the language in the Commentary. The adjective

"express" is defined as:
directly and distinctly stated or expressed rather than implied or
        left to inference . . . Definite, Clear, Explicit,
        Unmistakable . . .

Webster's Third New International Dictionary 803 (1966). There is

no way, I submit, that the defendant's statement meets that

definition. It may be an implied threat, but it is surely not an

express threat.

        I could elaborate upon these views, but they have

recently been articulated quite forcefully by the Sixth Circuit in

United States v. Alexander, 88 F.3d 427, 428-31 (6th Cir. 1996),

and by Judge Easterbrook, dissenting in United States v. Hunn, 24

F.3d 994, 999-1000 (7th Cir. 1994) (Easterbrook, J., dissenting).[4]

 Judge Easterbrook put it best:
The Sentencing Commission set out to distinguish degrees of
        threats. Saying that you have a gun does not
        invariably induce a fear of death. To separate
        ordinary references to guns, and the apprehension they
        produce, from the terror that a threat of death yields,
        the Sentencing Commission provided that only an
        "express threat of death" justifies the two-level
        increase. An implication from words and gestures is
        not enough. Only what the bandit says or conveys in
        signs, not what the victim reads into shadings of "I
        have a gun," is an "express" threat. Anything else
        dissolves the difference between posturing and genuine
        threats of death.

. . . .

Threats lie along a continuum of seriousness and gravity. Yet the
        Sentencing Commission did not compose a multi-factor
        approach or ask the courts to balance objectives. It
        created a dichotomy between "express" and "implied"

---

    [4]In his dissenting opinion in United States v. Cadotte, 57
F.3d 661 (8th Cir. 1995), Judge Morris Arnold also expressed his
view that the threat of death need be express to satisfy §
2B3.1(b)(2)(F). See id. at 662 (Arnold, J., dissenting).

17

> threats of death. . . . [F]eigning is ordinary for a bank robbery. It may have placed the teller in fear of harm, but harm is not death, and an inference from the announcement of a weapon is not an "express" threat. The application note shows . . . that a conditional threat can be "express"; if, as the majority holds, an implied conditional threat also qualified, then "express" has been read out of the Guideline.

Id. (emphasis in original). I endorse these views; hence I respectfully dissent.

## II.

Having been alerted to the Judicial uncertainty over the import of § 2B3.1(b)(2)(F), the Sentencing Commission has recently proposed amendments to that Guideline and the Commentary thereto. See Proposed Amendments to the Federal Sentencing Guidelines, 60 Crim. L. Rep. (BNA) 2019, 2034 (Jan. 15, 1997). Significantly, the amendment deletes from the Guideline itself reference to "express" in the clause "an express threat of death." That clause is the source of the difficulty I identified in Part I. This deletion suggests that, whatever the Commission's intention may originally have been (the Commission writes that the amendments are crafted "to clarif[y] the Commission's intent to enhance offense levels for defendants whose intimidation of the victim exceeds that amount necessary to constitute an element of a robbery offense"), its original drafting prevented the courts from uniformly effectuating that intention. That the Commission had to remove "express" from the Guideline itself, in order now to ensure uniform application of the Guideline in the courts, makes clear that the original Commentary was without legal force. The Commission impliedly recognizes that the Commentary was

18

inconsistent with the Guideline text, the very inconsistency Judge Easterbrook described in Hunn.

In sum, while in cases that arise after the effective date of the Amendment (assuming that it passes) the district courts will be authorized to impose an upward adjustment on the basis of any intimidation of the victim that exceeds that amount necessary to constitute an element of a robbery offense, in the present case the Guideline must be construed to require an express threat of death. Because the record contains no evidence of such a threat, I would vacate the judgment and remand for resentencing.