USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

No. 98-1271

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 THOMAS J. BURNS,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Patti B. Saris, U.S. District Judge]

 

 Before

 Lynch, Circuit Judge,

 Cyr, Senior Circuit Judge,

 and Lipez, Circuit Judge.

 

 Miriam Conrad for appellant.
 Robert E. Richardson, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

 

 November 20, 1998
 CYR, Senior Circuit Judge. Defendant Thomas J. Burns
challenges the two-point sentencing enhancement imposed upon him by
the district court pursuant to USSG 2B3.1(b)(2)(F) (1995) for
having made "express threat[s] of death" during two separate bank
robberies. We affirm.
 I
 BACKGROUND
 Burns robbed the banks in the spring of 1997, on each
occasion handing the teller a note warning: "I have a gun! Don't
make me use it." After the government charged Burns with two
counts of bank robbery, see 18 U.S.C. 2113(a), the parties
arrived at a plea agreement whereby the government promised to
refrain, "at sentencing," from recommending that Burns receive the
two-level enhancement under 2B3.1(b)(2)(F) for making "express
threat[s] of death" during the robberies. Although the government
abided by its agreement, the district court nevertheless elected to
impose the two-level enhancement.
 II
 DISCUSSION
A. The Scope of the Plea Agreement
 Before addressing the merits, we turn to Burns' motion to
strike the government's brief on appeal. Burns insists that the
government cannot be heard to contend on appeal that the district
court correctly imposed the very sentencing enhancement which the
government, pursuant to the plea agreement, agreed to refrain from
recommending "at sentencing," see Plea Agreement 3.
 We acknowledge concerns regarding the government's
ambivalence, especially since a commonsense understanding of the
language of the plea agreement itself offers little hint that the
parties mutually contemplated that the government remained free to
advocate a two-level enhancement on appeal. As we repeatedly have
made clear, moreover, "[b]ecause plea bargaining requires
defendants to waive fundamental constitutional rights, we hold
prosecutors engaging in plea bargaining to 'the most meticulous
standards of both promise and performance.'" United States v.
Velez-Carrero, 77 F.3d 11, 11 (1st Cir. 1996) (citation omitted).
See United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995); Correalev. United States, 479 F.2d 944, 947 (1st Cir. 1973). We think the
message is clear, therefore, that significant plea-agreement terms
should be stated explicitly and unambiguously so as to preclude
their subsequent circumvention by either party. See United Statesv. Canada, 960 F.2d 263, 269 (1st Cir. 1992) (noting that the
government not only is forbidden from any "explicit repudiation of
[its] assurances," but from "end-runs around them"); United Statesv. Garcia, 698 F.2d 31, 37 (1st Cir. 1983) ("'A plea agreement is
not an appropriate context for the Government to resort to a
rigidly literal approach in the construction of language.'")
(citation omitted). Thus, defense counsel too must be alert to the
need for clear and explicit articulation of all pertinent terms in
any plea agreement negotiated with government counsel.
 In the instant case, however, it is not necessary to
determine whether the government breached its plea agreement, as we
would be obliged in all events to consider whether the district
court correctly imposed the sentencing enhancement at issue in this
case, with or without the benefit of the government's advocacy on
appeal. Accordingly, we now turn to the language of 
2B3.1(b)(2)(F), which we construe de novo. See United States v.
Nicholas, 133 F.3d 133, 134 (1st Cir. 1998).
B. USSG 2B3.1(b)(2)(F)
 Burns argues that the notes handed to the bank tellers ÄÄ
expressly threatening to use a gun ÄÄ were not "express threat[s]
of death" for purposes of 2B3.1(b)(2)(F) because they fairly
could be interpreted simply to imply an intention to use a gun to
fire warning shots or to shoot only to wound, rather than to kill. 
The applicable guidelines section provided:
 (A) If a firearm was discharged, increase [the
 base offense level] by 7 levels; (B) if a
 firearm was otherwise used, increase by 6
 levels; (C) if a firearm was brandished,
 displayed, or possessed, increase by 5 levels;
 (D) if a dangerous weapon was otherwise used,
 increase by 4 levels; (E) if a dangerous
 weapon was brandished, displayed, or
 possessed, increase by 3 levels; or (F) if an
 express threat of death was made, increase by
 2 levels.

USSG 2B3.1(b)(2) (emphasis added).

 The courts of appeals which have considered the issue to
date ascribe two conflicting interpretations to the pivotal
guideline phrase "express threat of death." Seven circuits
presently hold that the defendant need not have expressed in words
or actions an intention "to kill," provided the words or actions
employed were such as to place the victim in objectively reasonable
fear for his or her life. See United States v. Figueroa, 105 F.3d
874 (3d Cir.), cert. denied, 117 S. Ct. 1860 (1997); United Statesv. Murray, 65 F.3d 1161 (4th Cir. 1995); United States v. Carbaugh,
141 F.3d 791 (7th Cir. 1998); United States v. Tolen, 143 F.3d 1121
(8th Cir. 1998); United States v. France, 57 F.3d 865 (9th Cir.
1995); United States v. Lambert, 995 F.2d 1006 (10th Cir. 1993);
United States v. Robinson, 86 F.3d 1197 (D.C. Cir. 1996).
 These decisions rely on guideline commentary squarely in
point here:
 An "express threat of death," as used in
 subsection (b)(2)(F), may be in the form of an
 oral or written statement, act, gesture, or
 combination thereof. For example, an oral or
 written demand using words such as "Give me the
 money or I will kill you," "Give me the money
 or I will pull the pin on the grenade I have
 in my pocket," "Give me the money or I will
 shoot you," "Give me your money or else (where
 defendant draws his hand across his throat in
 a slashing motion)", "Give me your money or you
 are dead" would constitute an express threat of
 death. The court should consider that the
 intent of the underlying provision is to
 provide an increased offense level for cases
 in which the offender(s) engaged in conduct
 that would instill in a reasonable person, who
 is a victim of the offense, significantly
 greater fear than that necessary to constitute
 an element of the offense of robbery.

USSG 2B3.1, comment. (n.6) (1995) (emphasis added). Importantly,
these courts accord the quoted commentary deference as a reasonable
interpretation of 2B3.1(b)(2)(F) by the United States Sentencing
Commission. "The Commission, after all, drafts the guidelines as
well as the commentary interpreting them, so we can presume that
the interpretations of the guidelines contained in the commentary
represent the most accurate indications of how the Commission deems
that the guidelines should be applied to be consistent with the
Guidelines Manual as a whole as well as the authorizing statute." 
Stinson v. United States, 508 U.S. 36, 45 (1993).
 Two other courts of appeals have held that the term
"express" contemplates nothing less than that the defendant have
unambiguously declared, either through words or unambiguous
conduct, that he intends to kill the victim. See United States v.
Alexander, 88 F.3d 427 (6th Cir. 1996); United States v. Moore, 6
F.3d 715 (11th Cir. 1993). Citing one common definition of the
adjective "express" ÄÄ "[d]irectly and distinctly stated or
expressed rather than implied or left to inference," Alexander, 88
F.3d at 430 (emphasis added) ÄÄ these courts hold that Application
Note 6 cannot control the interpretation of 2B3.1(b)(2)(F)
because Note 6 focuses on the victim's reasonable perceptions, thus
is inconsistent with the guideline language itself, which focuses
exclusively on the literal wording of the threat. See Stinson, 508
U.S. at 38 ("[C]ommentary in the Guidelines Manual that interprets
or explains a guideline is authoritative unless it violates the
Constitution or a federal statute, or is inconsistent with, or a
plainly erroneous reading of, that guideline.") (emphasis added);
United States v. Damon, 127 F.3d 139, 145 n.7 (1st Cir. 1997)
(same). Thus, declarations such as "I have a gun," or even "I will
use my gun," are not to be considered "express threats of death"
because the victim necessarily must supply the ultimate inference
that the defendant means to shoot to kill, not merely to wound. We
opt for the majority view. 
 Before sentencing guideline language and its related
commentary may be deemed mutually inconsistent, the court must
determine that "following one will result in violating the dictates
of the other." Stinson, 508 U.S. at 43. Although the adjective
"express" commonly connotes "[d]irectly and distinctly stated or
expressed rather than implied or left to inference," in the
alternative it may simply mean something which is perceived as"clear" and "unambiguous." See Figueroa, 105 F.3d at 877 (citing
Robinson, 86 F.3d at 1200). Thus construed, 2B3.1(b)(2)(F)
focuses not upon the criminal defendant's subjective intent as
expressed through the literal language of the threat, but upon the
likely inferences which the victim reasonably might draw in the
circumstances. Moreover, nothing in the term "express" itself
remotely compels the conclusion that Congress intended the most
restrictive interpretation of 2B3.1(b)(2)(F). Consequently, even
if we were inclined to interpret the term "express" differently than
the Commission, we would defer to the guideline commentary because
the term "express" reasonably is construed in context as synonymous
with "perceived as clear and unambiguous."
 The Sentencing Commission gloss on 2B3.1(b)(2)(F) goes
well beyond the merely plausible, however; it is an eminently
sensible assessment of the likely legislative intent. The
commentary instructs that "[t]he court should consider that the
intent of [ 2B3.1(b)(2)(F)] is to provide an increased offense
level for cases in which the offender(s) engaged in conduct that
would instill in a reasonable person, who is a victim of the
offense, significantly greater fear than that necessary to
constitute an element of the offense of robbery." See USSG 
2B3.1, comment. (n.6) (1995) (emphasis added).
 The offense of robbery contemplates simply that the
defendant have subjected his victim to minimal levels of fear or
"intimidation." See 18 U.S.C. 2133(a). Courts generally evaluate
levels of "intimidation" under an objective standard: whether a
reasonable person in the same circumstances would have felt coerced
by a threat of bodily harm. See, e.g., United States v. Henson,
945 F.2d 430, 439-40 (1st Cir. 1991); see also United States v.
Askari, 140 F.3d 536, 541 (3d Cir. 1998) (en banc); United Statesv. Woodrup, 86 F.3d 359, 363-64 (4th Cir. 1996); United States v.
Foppe, 993 F.2d 1444, 1451 (9th Cir. 1993). 
 Section 2B3.1(b)(2) identifies six settings, in
descending order of seriousness, wherein a defendant will be found
to have engaged in something more than mere "intimidation," so as
to enhance the actual or perceived risk to the victim. SeeLambert, 995 F.2d at 1008 ("Although coercion and at least implied
threats are necessarily involved in the bank robbery offense,
express threats of death are not."). Thus, the Sentencing
Commission determination to interpret "express threat of death"
under an objective, reasonable-person standard, rather than the
subjective standard advocated in Alexander and Moore, supra,
comports with the standard for assessing "intimidation" under 18
U.S.C. 2113(a). The remaining question, then, is whether the
notes Burns passed to the tellers came within the definition of
"express" contained in the guideline commentary.
 We would be loathe to hold that a reasonable bank teller
ÄÄ presented with a demand for money stating: "I have a gun! 
Don't make me use it." ÄÄ would be unlikely to infer that the
robber was announcing his readiness to use the gun. Moreover, even
assuming that quibbles as to whether the robber meant to shoot to
kill, or merely to wound, are likely to occur at all to a teller
actually confronted by a bank robber, they simply do not represent
distinctions of compelling weight under an "objective
reasonableness" standard. As the Third Circuit has observed, "[i]n
the calmer atmosphere of a sentencing colloquy, the[se] different
wordings may seem significant; however, in the tense environment of
a bank robbery, the differences are truly only semantic and
negligible." Figueroa, 105 F.3d at 878. See United States v.
Hunn, 24 F.3d 994, 998 (7th Cir. 1994) (requiring that defendant
say "I will kill you" "discounts real-world uncertainties").
 In our judgment it is highly probable that an objectively
reasonable person, confronted by Burns' threat to "use" the gun he
claimed to possess unless the teller turned over the money, would
draw little comfort from any surmise concerning whether Burns
actually had a gun; whether he really meant to use it; and, if so,
whether he intended merely to wound rather than kill absent
compliance. Thus, the coercive power Burns brought to bear in
these robberies far exceeded the minimal level of "intimidation"
required under 18 U.S.C. 2133(a), see supra. See, e.g.,
Robinson, 86 F.3d at 1202 ("[A] reasonable teller receiving a note
from a bank robber would very likely infer that 'shoot' means
'kill'."); United States v. Jones, 83 F.3d 927, 929 (7th Cir. 1996)
(noting: when defendant states he has a gun and will use it,
"[w]hy would anyone want to assume that he was merely a liar or a
bluffer?").
 III
 CONCLUSION
 We therefore conclude that the Sentencing Commission
gloss on 2B3.1(b)(2) in Application Note 6 warrants due deference
as a plausible interpretation by the agency entrusted by Congress
with the responsibility to administer the guidelines and that the
Burns threats in this case came within the definition of "express
threat" adopted by the Commission.
 Affirmed.
 - Dissenting opinion follows -

 LYNCH, Circuit Judge, dissenting. I respectfully dissent
from the well-crafted majority opinion, joining instead the
reasoning of the Eleventh Circuit in United States v. Tuck, 964
F.2d 1079 (11th Cir. 1992), of the Sixth Circuit in United Statesv. Alexander, 88 F.3d 427 (6th Cir. 1996), of Judge Easterbrook,
dissenting in United States v. Hunn, 24 F.3d 994 (7th Cir. 1994),
of Judge Becker, dissenting in United States v. Figueroa, 105 F.3d
874 (3d Cir.), cert. denied, 117 S. Ct. 1860 (1997), and of Judge
Arnold, dissenting in United States v. Cadotte, 57 F.3d 661 (8th
Cir. 1995). Given the forceful and clear expressions of the
rationale in those opinions, I add only a few words.
 The issue is whether a note, handed by the defendant bank
robber to a teller, constitutes an "express threat of death." The
note read: "I have a gun! Don't make me use it." No gun was seen
or otherwise gestured to, so the issue entirely turns on the words
of the note. If the note is an express threat, then an additional
two levels, or a range of 14 to 18 months, were properly added by
the district court to the sentence.
 The common definition of an "express" threat is a threat
which is "definitely and explicitly stated," The American Heritage
Dictionary (2d College ed. 1985), or "distinctly stated or
expressed rather than implied or left to inference," Webster's
Third New International Dictionary 803 (1993), or "clear; definite;
explicit; unmistakable; not dubious or ambiguous," Black's Law
Dictionary 691 (4th ed. 1951). By any common understanding of the
term "express threat of death," this note was not such a threat.
 Nevertheless, the majority and several other circuits are
persuaded by the commentary to the Guidelines, as the majority
opinion skillfully explains. But the Commission in the guise of
commentary is not free to change the meaning of the Guidelines, seeStinson v. United States, 508 U.S. 36, 43 (1993), and that, on the
facts of this case, is what is happening here. As Chief Justice
John Marshall said almost one hundred and eighty years ago: "Where
there is no ambiguity in the words, there is no room for
construction. The case must be a strong one indeed, which would
justify a Court in departing from the plain meaning of words,
especially in a penal act, in search of an intention which the
words themselves did not suggest. To determine that a case is
within the intention of a statute, its language must authorise us
to say so." United States v. Wiltberger, 18 U.S. (5 Wheat.) 76,
95-96 (1820).
 What harm is there in this? The harm to Burns is
concrete more time in prison. There is harm to the law as well. 
One harm is that articulated by Judge Easterbrook that this
Guideline is part of a series of sanctions meant to gradate degrees
of threats, and this result "dissolves the difference" in degree. 
See Hunn, 24 F.3d at 999 (Easterbrook, J., dissenting). The intent
of this particular law is thus perverted.
 Another harm is even more fundamental and is to the
structure of the law. The law should mean what it says. The
Supreme Court has weighed the constitutional effects of laws by
taking them to mean what they say, finding that the appropriate
measure. See Baggett v. Bullitt, 377 U.S. 360, 374 (1963)
(invalidating state-mandated oath of office and replying to state's
contention that people would not decline to take the oath out of
fear because there was little reason to fear prosecution by
saying that "[t]his contention ignores not only the effect of the
oath on those who will not solemnly swear unless they can do so
honestly and without prevarication and reservation, but also its
effect on those who believe the written law means what it says."). 
If the law does not mean what it says, as has happened here, then
it has failed to meet one of the most basic requirements for any
fair and just legal system.