OPINION OF THE COURT
JORDAN, Circuit Judge.
Frederick Baynes appeals from a judgment entered by the United States District Court for the Eastern District of Pennsylvania upon his conviction on eleven counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and his sentence of 126 months’ imprisonment. Baynes argues that his sentence should be vacated because the District Court erred in deciding, pursuant to U.S.S.G. § 2B3.1(b)(2)(F), that he was subject to a sentencing enhancement because he had made a death threat. For the following reasons, we will affirm.
I. Background
This case arises from eleven bank robberies that Baynes committed in Philadelphia, Pennsylvania between July 13, 2007 and October 22, 2007. The Philadelphia Police Department arrested him on October 26, 2007, and, on November 7, 2007, a federal grand jury in the Eastern District of Pennsylvania returned an eleven-count indictment charging him with bank robbery, in violation of 18 U.S.C. § 2113(a). On December 1, 2008, Baynes pled guilty to all counts of the indictment.
Following the guilty plea, a probation officer prepared a Presentence Investigation Report (“PSR”), which offered brief accounts of the robberies. Of particular relevance to this appeal is the following description from the PSR of a July 13, *366 2007 encounter between Baynes and a bank teller:
On July 13, 2007, the defendant entered the PNC Bank, located at 1801 Market Street, Philadelphia, Pennsylvania, and approached a teller window. The defendant then handed the victim teller a demand note which read something to the effect of “no dye pack, no tracker, 20’s, 50’s and 100’s or I’m going to pull this.” The defendant kept one of his hands down at his side which caused the victim teller to believe that the defendant was armed. The victim teller then removed money from the teller drawer and provided it to the defendant. The defendant subsequently fled the bank, with the demand note, and walked eastbound on Market Street.
(PSR at ¶ 9.) The PSR classified Baynes’s conduct on that occasion as a threat of death and, pursuant to § 2B3.1(b)(2)(F) of the United States Sentencing Guidelines, increased his offense level by two levels. Baynes’s criminal history was classified as category V, and, with the two-level death-threat enhancement, his total adjusted offense level was 26. That yielded a Guidelines range of 110 to 137 months’ imprisonment.
At the February 24, 2009 sentencing hearing, Baynes did not contest any of the matters contained in the PSR, and none of the hearing’s participants made any reference to the death-threat enhancement. The District Court determined that a sentence within the Guidelines range would accord with the statutory purposes identified in 18 U.S.C. § 3553(a) and imposed a term of imprisonment of 126 months.
II. Discussion[1]
Baynes’s sole argument on appeal is that the District Court erred in finding that his conduct on July 13, 2007 constituted a threat of death and hence a foundation for a sentencing enhancement under § 2B3.1(b)(2)(F). He concedes that, because he did not raise the issue in the District Court, we review that Court’s decision for plain error. FED. R. CRIM. P. 52(b); see also United States v. Evans, 155 F.3d 245, 248 (3d Cir.1998). Accordingly, Baynes must show “(1) error, (2) that is plain or obvious, and (3) that affects [his] substantial rights.” United States v. Berry, 553 F.3d 273, 279 (3d Cir.2009) (citation omitted). If Baynes satisfies all three conditions, we “may then exercise [our] discretion to notice a forfeited error, but only if ... the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.” Id. (quoting Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).
Baynes argues that his use of the phrase “pull this” is not a threat of death because “[a]t most, he implied inarticulately that he possessed some unknown intention, capacity, or object. The defining quality of the statement, therefore, is that it was too vague to permit any conclusion as to what it meant.” (Appellant’s Op. Br. at 16.) He further argues that, even if his statement could be construed as a threat, it was merely a “threat of bodily harm that is generic to all robbery offenses — not a threat of death.” (Id. at 19.)
Section 2B3.1(b)(2)(F) provides that a defendant’s offense level is to be increased by two levels when a “threat of death” is made in connection with a bank robbery. U.S.S.G. § 2B3.1(b)(2)(F). Application Note 6 says that a threat of death may consist of “an oral or written statement, act, gesture, or combination thereof,” id. at app. n. 6, and that a defendant “does not have to state expressly his intent to kill the victim in order for the enhancement to *367 apply.” Id. We have held that “[a] threat is a ‘threat of death’ if it would reasonably so appear to the receiver of that threat.” United States v. Thomas, 327 F.3d 253, 256 (3d Cir.2003). The focus is on whether, under the circumstances, a reasonable person in the victim’s position would have viewed the defendant’s conduct as a threat of death. Id. at 255, 256.
The enhancement called for by § 2B3.1(b)(2)(F) applies only to death threats, and we have stated that “[treating' all threats in the course of a robbery as threats of death would defeat the distinction the enhancement seeks to capture.” Id. at 257. However, context is everything when distinguishing between a threat of death and threats of violence in general, and, “[i]n certain contexts, a general threat of violence may readily be viewed as encompassing the possibility of death.” Id. at 256. With respect to a bank robbery, we have held that the context is “inherently intimidating.” Id. at 257.
In Thomas, we examined the following statement in a bank robber’s demand note: “fill the bag with $100s, $50s and $20s, a dye pack will bring me back for your ass.” Id. at 254. At issue was whether the statement “a dye pack will bring me back for your ass” constituted a threat of death for purposes of § 2B3.1(b)(2)(F). We acknowledged that “[w]hether Thomas’s threat was a threat of death or only a threat of harm is not free from doubt.” Id. at 257. However, given the circumstances under which the statement was made (i.e., during the course of a bank robbery), we held that the district court did not err in finding that a reasonable person in the teller’s position would believe that a threat of death had been made. Id. Specifically, we stated that, “given the inherently intimidating nature of a bank robbery, it may be reasonable for a teller to believe her life is at risk when she has been directly threatened.” Id.
Here, Baynes made a direct threat during the course of a bank robbery by presenting the teller with a note that stated: “no dye pack, no tracker, 20’s, 50’s, and 100’s or I’m going to pull this.” (PSR at ¶ 9.) A reasonable person in the teller’s position would have understood the note to convey both a demand and a related threat. The demand is perfectly straight forward: give me U.S. currency in 20 dollar, 50 dollar, and 100 dollar denominations, and do not put in with the money any dye pack or tracking device. The threat is less clear but still very understandable. Particularly in light of Baynes’s positioning of his arm in a way that conveyed that he had a weapon,[2] the statement “pull this” was readily understood as a reference to pulling a trigger. Thus, just as the statement “a dye pack will bring me back for your ass” constituted a threat of death in Thomas, “I’m going to pull this” constituted a threat of death here, because a reasonable person would perceive the statement as communicating Baynes’s intention to use deadly force if the teller did not comply with his demands.
Treating Baynes’s demand note as a threat of death is also supported by our holding in United States v. Figueroa, where we held that the defendant made a threat of death by handing the teller a note that stated, “I have a gun. Give me all the money.” 105 F.3d 874, 876 (3d *368 Cir.1997). We concluded that, although the note did not explicitly communicate an intention to use the weapon, “it is not unreasonable for a bank teller, confronted by a robber demanding money and ... claiming to have a gun, to fear that his or her life is in danger.” Id. at 879. “After all, what is the purpose of announcing the presence of the weapon other than to convey to the victim that the weapon will be used unless the victim complies with the robber’s demands?” Id. Further, we stated that “[i]f section 2B3.1(b)(2)(F) applied] only to the defendant who explicitly communicates his intention to use the weapon if necessary, the result will be disparate sentences for defendants who have committed the same crime using the same means but who have differed in their verbosity or articulateness.” Id. at 880.
Again, in light of the circumstances, a reasonable person would interpret the phrase, “I’m going to pull this,” to mean that Baynes had a gun and intended to use it if the teller did not comply with his demands. It cannot be said that a reasonable person would believe that Baynes meant to pull out a harmless object or merely display a weapon without threatening to use it.
In sum, we do not believe that the District Court erred in finding that a reasonable person in the teller’s situation would have viewed Baynes’s statement as a threat of death. Accordingly, Baynes has failed to show an error in his sentencing, let alone a plain error affecting his substantial rights.
III. Conclusion
For the aforementioned reasons, we will affirm the judgment and sentence of the District Court.

. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

. According to the PSR, the teller believed Baynes was armed because he "kept one of his hands down at his side.” (PSR 11 9, 55.) Baynes argues that the positioning of his arm did not convey that he was armed because, "[rjather than ‘hiding’ any part of his body from view, he simply held ‘one of his hands down at his side.’ ” (Appellant's Op. Br. at 15) (quoting PSR 11 9.) However, the teller, presumably stationed behind a counter, interpreted Baynes's positioning differently. The District Court evidently accepted the teller's interpretation as reasonable, and we have no reason to disagree.