**UNITED STATES of America, Appellee,**

v.

**Robert ROBINSON, Appellant.**

**No. 95–3174.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 10, 1996.

Decided June 21, 1996.

**1198**

Teresa Alva, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant. A.J. Kramer, Federal Public Defender, and Frances H. Pratt, were on the briefs.

Chun T. Wright, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Thomas C. Black and Michael F. Tubach, Assistant United States Attorneys, were on the brief.

Before: EDWARDS, Chief Judge, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court by Circuit Judge TATEL.

TATEL, Circuit Judge:

"Give me one pack of 20s or I will shoot somebody in here now," read the note with which appellant robbed a Washington, D.C. bank. The question before us is whether those words amount to an "express threat of death" within the meaning of section 2B3.1(b)(2)(F) of the Sentencing Guidelines. Holding that they do, we affirm the district court's two-level enhancement of appellant's sentence.

I.

Section 2B3.1 of the Sentencing Guidelines governs sentences for robbery. Subsection (a) establishes the base offense level; subsection (b) provides several grounds for raising the offense level. Subsection (b)(2)(F) states that "if an express threat of death was made, increase [the offense level] by two levels." USSG § 2B3.1(b)(2)(F). The commentary to the guideline states in full:

> An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s)

engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

USSG § 2B3.1(b)(2)(F), comment. (n.6).

Appellant, Robert Robinson, pled guilty to robbing five banks in violation of 18 U.S.C. § 2113(a), which makes it a crime to take money from any bank "by force and violence, or by intimidation." Robinson used a different note in each robbery. He used the note we mention above—"Give me one pack of 20s or I will shoot somebody in here now"— during a March 15th robbery. In two other robberies, he used virtually identical notes: "I have a gun. Give me a pack of 20s or I will shoot somebody out here now"; and "I have a gun. Give me one pack of 20's or I will shoot somebody out here now." During the fourth robbery, he used a note demanding two packs of twenty dollar bills; during the final robbery, his note read simply, "I have a gun." Robinson never actually had a gun during the robberies, but no one else was aware of that at the time.

Finding that Robinson had made an "express threat of death" in all five robberies, the probation office recommended enhancing Robinson's offense level by two points under section 2B3.1(b)(2)(F). Robinson's counsel objected, arguing that the commentary's final sentence and all of its examples indicated that, in order to make an express threat of death, a robber had to "instill fear of death in the victim teller." His counsel argued that because Robinson's notes at most threatened only "somebody out here" or "somebody in here," his statements did not meet this requirement. Apparently concluding that at least one of Robinson's notes constituted an express threat of death, the district court applied the two-level enhancement and sentenced Robinson to 57 months imprisonment.

## II.

■ Robinson urges us to disregard the commentary as inconsistent with the guideline and, applying the plain language of the guideline to the statements he made during the robberies, to conclude that none of them was an "express threat of death." He claims that the guideline's use of the phrase "express threat of death" requires that the robber "directly, plainly, and unmistakably indicate that the victim was going to die." Appellant's Br. at 8. According to Robinson, a threat of death is not "express" if the victim must draw inferences in order to conclude that the robber is threatening death. He thus argues that the guideline conflicts with two portions of the commentary: the commentary's final sentence, because that sentence suggests that courts should examine the inferences that a reasonable victim would make; and the example, "Give me the money or I will shoot you," because the threat to "shoot" explicitly threatens only injury, requiring a victim to infer that the robber was threatening death.

■ Because Robinson did not make this argument before the district court—indeed, counsel never even hinted at any inconsistency between the guideline and the commentary—we review his argument under a plain error analysis. *See United States v. Saro,* 24 F.3d 283, 286–88 (D.C.Cir.1994); *United States v. Dawson,* 990 F.2d 1314, 1316–17 (D.C.Cir.1993). In interpreting a guideline and its commentary, we are bound by a set of familiar principles. Courts must consider commentary "that interprets or explains a guideline [to be] authoritative unless [the commentary] violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993); *see also id.* at 44–45, 113 S.Ct. at 1918–19. If commentary is inconsistent with a guideline, courts should disregard the conflicting portions of the commentary and rely upon the guideline itself. *Id.* at 43, 113 S.Ct. at 1918. Commentary is not "inconsistent" with a guideline simply because it adopts what we might regard as one of the less likely interpretations of a guideline. *See United States v. Smaw,* 22 F.3d 330, 333 (D.C.Cir.1994). Rather, since we must treat commentary interpreting a guideline as we would an agency's interpretation of its own regulations, *Stinson,* 508 U.S. at 44–45, 113 S.Ct. at 1918–19, commentary is inconsistent only if "an 'alternative reading is *compelled*

by the [guideline]'s plain language or by other indications of the [Sentencing Commission's] intent at the time of the [guideline]'s promulgation.'" *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, —— – ——, 114 S.Ct. 2381, 2386–87, 129 L.Ed.2d 405 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988)) (emphasis added); *see also Stinson*, 508 U.S. at 43, 113 S.Ct. at 1918 (requiring "flat inconsistency").

Applying these principles, we find no error, let alone plain error, in the district court's failure to detect the alleged inconsistencies. Indeed, we perceive no inconsistency at all between the robbery guideline and its commentary. While "express" may usually mean "[m]ade known distinctly and explicitly, and not left to inference," it may also simply mean "clear." BLACK'S LAW DICTIONARY 580 (6th ed.1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 803 (1993). The Sentencing Commission could thus reasonably interpret "express" to mean "clear"; having done so, it could determine that a robber "clearly" threatens another person with death even if a person on the receiving end of the threat had to draw some inferences in order to conclude that the robber was threatening to kill. Thus, to the extent the final sentence in the commentary suggests that the court should evaluate a robber's statement from the perspective of "a reasonable ... victim" to determine if it clearly threatens death, no irreconcilable conflict exists. Nor is there a conflict with the example, "Give me the money or I will shoot you." Admittedly, "I will shoot you" does not threaten death as unambiguously as "I will kill you." Yet the Sentencing Commission could reasonably determine that when a bank robber hands a note to a teller stating, "Give me the money or I will shoot you," the teller would clearly understand these words to be a threat to kill.

To support his argument that the guideline and commentary are inconsistent, Robinson cites two Ninth Circuit cases. In *United States v. Martinez–Cano*, 6 F.3d 1400, 1401–03 (9th Cir.1993), the court found a guideline requiring higher sentences for offenders trafficking in six or more "'sets'" of documents

inconsistent with its commentary, instructing courts to "'treat [a] set [of documents] as one document.'" *Id.* at 1402 (quoting USSG § 2L2.1(b)(2), comment. (n.2)). The Ninth Circuit reasoned that if a court were to follow the commentary, it could never achieve the six "sets" required to enhance a sentence under the guideline, because "as soon as one thought one had a set it would metamorphose into a single document only." *Id.* at 1403. The court thus concluded that the commentary and guideline were "in inexorable conflict." *Id.* As we indicate above, no such conflict exists here.

*United States v. O'Brien*, 50 F.3d 751 (9th Cir.1995), the other case cited by Robinson, does not support his position either. The *O'Brien* court found no inherent conflict between the guideline and the commentary, but merely between the guideline and another circuit's interpretation of the commentary. *See id.* at 754–56. *O'Brien* therefore stands for the rather uncontroversial principle that courts should not construe the commentary as to create a conflict with the guideline, but should read the commentary, if possible, in a way that harmonizes with the guideline's plain language. *See United States v. Anderson*, 942 F.2d 606, 612 (9th Cir.1991) (en banc).

Robinson also relies on a series of cases from the Eleventh Circuit, beginning with *United States v. Tuck*, 964 F.2d 1079, 1080–81 (1992), as well as dissenting opinions in cases from the Seventh and Eighth Circuits, finding various statements insufficiently clear to be express threats of death. *See United States v. Moore*, 6 F.3d 715, 721 (11th Cir. 1993); *United States v. Canzater*, 994 F.2d 773, 774–75 (11th Cir.1993); *see also United States v. Cadotte*, 57 F.3d 661, 662 (8th Cir. 1995) (Arnold, M.S., J., dissenting), *cert. denied*, —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 733 (1996); *United States v. Hunn*, 24 F.3d 994, 999 (7th Cir.1994) (Easterbrook, J., dissenting). None of these opinions, however, suggests ignoring the commentary because it is inconsistent with the guideline. Moreover, to the extent that the Eleventh Circuit decided not to rely on the commentary, it did so for a reason since rejected by the Supreme Court. In *Tuck*, the Eleventh

Circuit declined to rely on the commentary because it thought that it should treat the commentary like legislative history, resorting to it only if the guideline itself is ambiguous. *Tuck,* 964 F.2d at 1081 (citing *United States v. Stinson,* 957 F.2d 813, 814 (11th Cir.1992), *vacated by Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)). The Supreme Court rejected that premise in *Stinson,* holding that commentary should be treated not like legislative history, but like an agency's interpretation of its own regulations. *Stinson,* 508 U.S. at 42–45, 113 S.Ct. at 1917–19.

We are equally unpersuaded by Robinson's additional argument that we must ignore the robbery guideline's commentary because it is inconsistent with the extortion guideline and its commentary. Robinson contends that courts may enhance sentences under the robbery commentary in the same broad range of circumstances as they may enhance sentences under the extortion commentary. Because the robbery guideline authorizes a sentence enhancement only for an "express threat," while the extortion guideline permits an enhancement for either "an express *or implied* threat," USSG § 2B3.2(b)(1) (emphasis added), Robinson argues that we must ignore the robbery commentary in order to preserve the distinction between the two guidelines. We disagree with the premise of Robinson's argument. Even an expansive interpretation of the robbery commentary would permit enhancements in a far narrower range of circumstances than those meriting enhancement under the extortion commentary. Nothing in the robbery commentary even remotely suggests that courts could enhance sentences for robbery, as they may for extortion, based on no more than an inference that "reasonably could be" drawn from the offender's conduct, including inferences drawn from the "reputation" of the offender. USSG § 2B3.2(b)(1) comment. (n.2).

### III.

We now turn to Robinson's alternative argument, advanced before the district court, that his statements were not express threats of death because he did not threaten the life of the immediate victims of the robbery— that is, the tellers he asked to hand over the money. According to Robinson, the guideline requires that a robber must put a victim of the robbery in fear for his or her own life. Since the tellers in this case were the only ones who read the notes, Robinson argues that to satisfy the guideline he must have threatened their lives. He claims that, because the notes at most threatened to shoot "somebody," they did not threaten any teller's life with sufficient clarity to qualify for a sentence enhancement.

We determine the meaning of a guideline *de novo,* giving "due deference" to the district court's application of a guideline to the facts. *United States v. Montague,* 40 F.3d 1251, 1252–53 (D.C.Cir.1994) (quoting *United States v. Kim,* 23 F.3d 513, 517 (D.C.Cir.1994) (internal quotation marks omitted)). To the extent possible, we read the commentary and its guideline together, giving meaning to each term and treating the commentary as authoritative. *See Anderson,* 942 F.2d at 612–13.

The guideline establishes the irreducible requirements that the robber must make a "threat," that the threat must be "of death," and that such a threat must be "express." Because we understand "express" to mean "clear," to receive an enhanced sentence a defendant must clearly make a threat, and that threat must clearly be to kill. While the commentary's final sentence indicates that we must evaluate the robber's words and actions from the perspective of a reasonable person, neither the guideline nor the commentary declares how clear a threat must be. To us, however, the word "express" suggests that the robber must leave little room for doubt. Indeed, in all of the commentary's examples, a victim would very likely, not just probably, understand that the robber was making a threat and that the threat was to kill. Threats to slash a throat, pull a pin on a grenade, and even to "shoot you," leave some room for hope that the robber might intend only to wound, but not much: The target would very likely believe that the robber had threatened death. The guideline thus requires that a reasonable person in the position of a victim would be highly likely to

view the robber's words or actions as a threat to kill.

Reminding courts of the guideline's purpose, the final sentence of the commentary imposes another requirement: that the robber's conduct be such that it "would instill in a reasonable person . . . significantly greater fear than necessary to constitute the offense of robbery." This final sentence, however, leaves two issues unresolved. First, the commentary does not specify how much fear is necessary, particularly whether fear for someone *else's* life would suffice, such as the fear that could exist if a robber passes a note to a bank teller stating, "If you don't give me the money, I will shoot the young child standing by the door." The examples in the commentary do establish, however, that fear for one's *own* life is enough to trigger an enhancement. Second, the commentary does not indicate how likely it must be that a reasonable victim would feel the requisite amount of fear. The final sentence requires only that the robber's conduct must be such that it "would" instill the necessary quantum of fear in a victim. Unlike "express," the word "would" only obliges courts to predict a reasonable victim's reaction; it does not specify a degree of probability. In this context, we think the most natural interpretation of the word "would" is that it must be more likely than not that a reasonable victim experience the necessary level of fear.

■ We therefore hold that a robber makes an "express threat of death" if a reasonable person in the position of the immediate victim of the robbery would have (1) very likely believed that the robber made a threat and that the threat was to kill and (2) likely thought that his or her life was in peril, thereby experiencing "significantly greater fear" than the intimidation required to commit robbery. Applying this standard to the facts of this case, we must uphold Robinson's sentence if just one of the notes satisfies these requirements. *See Hunn,* 24 F.3d at 999 n. 7.

■ We find that Robinson's March 15th note, stating "Give me one pack of 20s or I'll shoot somebody in here now," meets these criteria. As the commentary establishes, a reasonable person during a bank robbery would be highly likely to interpret a threat to "shoot" as a threat to "kill." Robinson's note thus effectively read, "Give me one pack of 20s or I'll kill somebody in here now," an unmistakable threat of death.

As for the level of fear, because Robinson has failed to offer any other reasons why a teller would have felt immune from harm, we consider only Robinson's argument that he failed to threaten the teller's life with sufficient clarity to put a reasonable person in those circumstances in fear for his or her life. While Robinson's statement did not threaten a teller's life as unambiguously as the example in the commentary, "Give me the money or I will shoot *you,*" we have little doubt that a person in the position of the teller during the March 15th robbery would have believed that Robinson had threatened him with death. Just as a reasonable teller receiving a note from a bank robber would very likely infer that "shoot" means "kill," a reasonable teller would also probably infer that a threat to kill "somebody in here" referred to him. Indeed, in the highly-charged circumstances of a robbery, we think that the threat to "shoot somebody in here" is practically indistinguishable from the threat to "shoot you."

In reaching this conclusion, we have not addressed several issues that may well arise given the commentary's lack of clarity. Because Robinson handed his March 15th note to the immediate victim of a robbery, we need not consider whether a statement conveyed to others—for example, a statement to bystanders, such as "Get out of my way or I will kill you"—could be an express threat of death under the guideline. *See United States v. Ashburn,* 20 F.3d 1336 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1969, 131 L.Ed.2d 858 (1995). Nor, as we mentioned above, have we considered whether a statement threatening the life of an individual other than the person receiving the message could create the requisite fear to satisfy the commentary.

We also do not decide whether the statements Robinson made during the other four robberies were express threats of death. In our view, however, each of Robinson's other notes was less likely to satisfy the require-

ments set forth above. We doubt, for example, that Robinson's mere demand to hand over a package of twenty dollar bills could qualify as an express threat of death. A reasonable person reading that statement would be unlikely to interpret it as a threat, let alone a threat to kill. We also find it difficult to imagine how such a statement would likely instill significantly greater fear than the level of intimidation required to commit a robbery. Similarly, the statement, "I have a gun," does not threaten death as clearly as the March 15th note—indeed, on its face, it is not a "threat" at all. Finally, we think that Robinson's two remaining notes, threatening to shoot "somebody *out* here" rather than "somebody *in* here," would be less likely to put a teller in fear for his or her own life.

In interpreting the robbery guideline, we recognize that we add yet one more interpretation of section 2B3.1(b)(2)(F) to the conflicting views adopted by our sister circuits. The Eleventh Circuit appears to have adopted the narrowest interpretation, defining an express threat of death as one that is "directly or distinctly stated, and not ... implied or left to inference." *Canzater,* 994 F.2d at 775; *see also Tuck,* 964 F.2d at 1081. While agreeing that threats must be clear, we have concluded that express threats of death can be based on inferences. At the opposite end of the spectrum, the Eighth and Ninth Circuits have effectively replaced the "express threat of death" requirement with the commentary's final sentence, permitting enhancement whenever the robber "instill[s] in a reasonable victim 'significantly greater fear than that necessary to constitute an element of the offense of robbery.'" *Cadotte,* 57 F.3d at 662 (quoting USSG § 2B3.1, comment. (n.6)); *see also United States v. Strandberg,* 952 F.2d 1149, 1151 (9th Cir. 1991). In contrast, our approach requires that a robber clearly threaten death in addition to instilling a significantly greater quantum of fear than the "intimidation" required for a conviction under 18 U.S.C. § 2113(a)—a view we think is faithful to our obligation to give meaning to both the guideline and the commentary. Our analysis is closer to the approaches of the Seventh and Fourth Circuits. Like the Seventh Circuit, we require a

robber to threaten death clearly, although one may do so by implication, *see Hunn,* 24 F.3d at 998 (allowing enhancement when "a reasonable victim could understand [the offender]'s message loud and clear as a death-threat"). And, like the Fourth Circuit, we permit enhancement if a robber's conduct "would place an ordinary person in the victim's position in reasonable apprehension for his or her life," *see United States v. Murray,* 65 F.3d 1161, 1167 (4th Cir.1995), although we leave open the possibility that a court may enhance a sentence even if an ordinary person would be placed in fear for someone else's life.

## IV.

Because we reject Robinson's arguments that the guideline and its commentary are inconsistent, and because Robinson's March 15th note clearly threatened death and would have led a reasonable person receiving the note to believe that his or her life was in danger, we conclude that Robinson made an express threat of death within the meaning of section 2B3.1(b)(2)(F). We thus affirm his sentence.

*So ordered.*