**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                   No. 95-5685

HEATHER M. CENTNER,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
W. Earl Britt, District Judge.
(CR-95-8-7-BR)

Argued: March 7, 1997

Decided: June 17, 1997

Before WILLIAMS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. John Samuel Bowler, Assis-
tant United States Attorney, Raleigh, North Carolina, for Appellee.
**ON BRIEF:** Janice McKenzie Cole, United States Attorney, Raleigh,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Heather Centner pled guilty to two counts of knowingly and willfully causing her two daughters to be in a place where they could be abused. These counts were based on violations of North Carolina state law that were assimilated into federal law because the abuse took place at a Marine Corps base. Centner appeals her sentence. Although no sentencing guideline directly covers the offense to which Centner pled guilty, she claims that the court should have applied the guideline for misprision rather than using the guideline for aiding and abetting. We find no error and affirm.

I.

In July 1994 Centner and her two daughters, Jennifer Centner (3 years old) and Brianne Sweet (15 months), moved into the barracks room of Corporal Ernest Flores, with whom Centner had a romantic relationship. Flores lived at Camp Lejeune, a Marine Corps base in North Carolina, and was not allowed to have anyone living with him in the barracks. Centner and her daughters managed to keep their presence a secret until September 6, 1994, when they were discovered by agents of the Naval Criminal Investigative Service (NCIS).

The NCIS had been tipped off by a source who had also reported seeing suspicious bruises on the two girls. When the agents arrived at the barracks, they persuaded Centner to allow her daughters to undergo medical examinations at a local hospital. The examinations revealed that both children had numerous bruises, contusions, abrasions, and pattern marks. Brianne had a belt mark across her buttocks, and Jennifer appeared to have a cigarette burn on the inside of her knee. Colposcopic examinations revealed that both girls had been anally penetrated. They were immediately taken into protective custody and placed in a foster home.

2

On September 6, the first day of the investigation, Centner told the NCIS agents that she was responsible for all of the girls' injuries. About one week later, however, she recanted and claimed that Flores had committed the abuse. Flores initially denied abusing the girls but later confessed to hitting them. He claimed, however, that Centner had also taken part in the abuse. At an interview in late October Centner admitted to knowing that the girls had been anally penetrated.

Flores was court-martialed and convicted of abuse. He received an eight-year sentence, but only 14 months had to be served in custody. Centner was indicted on four counts in federal court. Counts 1 and 2 charged her with "knowingly and willfully caus[ing]" each daughter "to be in a place whereby the child could be abused, to wit: the child was placed in the barracks room of Corporal Ernest S. Flores, who caused physical injury to the child." These counts were brought under N.C. Gen. Stat. § 14-316.1, which was assimilated into federal jurisdiction under 18 U.S.C. § 13. Counts 3 and 4 charged Centner with inflicting physical injury on her daughters in violation of N.C. Gen. Stat. § 14-318.2.

Centner pled guilty to counts 1 and 2, and counts 3 and 4 were dismissed. The primary issue at sentencing was what guideline should apply. The government and the probation officer recommended that the most analogous crime would be aiding and abetting aggravated assault and that therefore U.S.S.G. §§ 2X2.1 and 2A2.2 should apply. Centner argued that the crime of misprision of a felony was more analogous or, in the alternative, that the catch-all sentencing provision, 18 U.S.C. § 3553(b), should apply. The district court decided to use the guideline for aiding and abetting aggravated assault and sentenced Centner to 41 months of imprisonment. Centner appeals.

II.

Centner pled guilty to two violations of N.C. Gen. Stat § 14-316.1, which provides:

> Any person . . . who knowingly or willfully causes, encourages, or aids any juvenile . . . to be in a place or condition, or to commit any act whereby the juvenile could be adjudi-

3

cated delinquent, undisciplined, abused, or neglected . . .
shall be guilty of a misdemeanor.**1**

According to N.C. Gen. Stat. § 14-3 the maximum prison term for each count is two years.**2**

In order to enable federal authorities to prosecute for offenses that are committed on federal lands and for which there are no federal criminal statutes on point, the Assimilative Crimes Act (ACA) incorporates the substantive criminal law of the underlying state into federal criminal law and authorizes the prosecution of offenders in federal courts under such state laws. The relevant section of the ACA, 18 U.S.C. § 13(a), provides that:

> Whoever within or upon [federal lands] is guilty of an act or omission which, although not punishable by an act of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

We have interpreted the "like punishment" requirement to "mandate[ ] that federal court sentences for assimilated crimes must fall within the minimum and maximum terms established by state law." United States v. Young, 916 F.2d 147, 150 (4th Cir. 1990). While keeping within this limit, however, a district court must rely primarily on the Sentencing Guidelines to determine the sentence, even for offenses assimilated under 18 U.S.C. § 13. See 18 U.S.C. § 3551(a); United States v. Harris, 27 F.3d 111, 115 (4th Cir. 1994) (affirming that the sentencing court "must adhere to the most analogous offense guideline" for convictions under 18 U.S.C. § 13).

_____

**1** Violations of section 14-316.1 were reclassified as Class 1 misdemeanors for those crimes committed after October 1, 1994. See 1993 N.C. Sess. Laws 539; 1994 N.C. Extra Sess. Laws 24.
**2** This section was amended in 1993, but the amendment only applies to crimes committed after October 1, 1994. See 1993 N.C. Sess. Laws 538; 1994 N.C. Extra Sess. Laws 24.

The Sentencing Guidelines do not provide a specific guideline for the crime to which Centner pled guilty.[3] Section 2X5.1 of the Guidelines directs that "[i]f the offense is a felony or Class A misdemeanor for which no guideline expressly has been promulgated, apply the most analogous offense guideline." The probation officer in charge of preparing Centner's presentence report concluded that U.S.S.G. § 2X2.1, which covers aiding and abetting, was the most analogous guideline for Centner's offense. Section 2X2.1 instructs that the offense level for aiding and abetting shall be the same as the offense level for the underlying offense. The probation officer concluded that the underlying offense was aggravated assault and recommended that the guideline for that offense (§ 2A2.2) be applied to both of Centner's crimes. The district court concurred in this analysis.

Centner contends that the district court erred in applying the guideline for aiding and abetting. Centner argues that a conviction for aiding or abetting requires the same mens rea as the crime itself; the aider and abettor must have the same intent as the perpetrator to see the crime committed. See United States v. Valencia, 907 F.2d 671, 680 (7th Cir. 1990) ("The state of mind required for conviction as an aider and abettor is the same state of mind as required for the principal offense."). Centner was convicted, however, of knowingly and willfully causing her daughters to be in a place where they could be abused. Centner argues that N.C. Gen. Stat. § 14-316.1 does not require any intent that the children be abused. Since aiding and abetting does require such intent, Centner claims that it is not analogous. Instead, Centner argues that the guideline for misprision of a felony, U.S.S.G. § 2X4.1, should have been applied. Alternatively, Centner contends that no guideline is analogous and therefore the catch-all provisions in 18 U.S.C. § 3553(b) should have been applied.

"The selection of an analogous Guideline where no specific Guideline exists is an application of the Sentencing Guidelines, which is reviewed de novo." United States v. Merino , 44 F.3d 749, 754 (9th Cir. 1994). We conclude that the district court's use of the aiding and abetting guideline for aggravated assault was not erroneous. According to the indictment, Centner was charged with "knowingly and willfully caus[ing her children] to be in a place whereby the child[ren]

_____

[3] The 1994 Sentencing Guidelines were used in this case.

5

could be abused, to wit: the child[ren were] placed in the barracks room of Corporal Ernest S. Flores, who caused physical injury to the child[ren]." It is somewhat unclear what the "could" in the indictment means: it could mean that there was only a possibility that they would be abused, or it could mean that Centner enabled Flores to abuse them. Under either reading, however, Centner knew and intended that her children would be in a position where they might be abused, making her at least reckless as to their fate.**4** Although this is a somewhat weaker mens rea than actual intent to place the children in a situation where they <u>would</u> be abused, it is close enough to make the aiding and abetting guideline (for aggravated assault) analogous. <u>Cf. United States v. Terry</u>, 86 F.3d 353, 358 (4th Cir. 1996) ("We recognize that the conduct described in the indictment does not match the Guidelines' definition . . . perfectly, but a perfect match is not required."). Misprision of a felony, on the other hand, only requires that one take an affirmative step to conceal a crime that has already been committed. <u>See</u> 18 U.S.C. § 4 (prohibiting those "having knowledge of the actual commission of a felony" from "conceal[ing] and . . . not as soon as possible mak[ing] known the same to some judge or other person"). The Fifth Circuit noted in <u>United States v. Godbolt</u>, 54 F.3d 232, 234 (5th Cir. 1995), that the guideline for misprision, U.S.S.G. § 2X4.1, "presupposes a defendant's lack of involvement in the underlying offense." Centner, however, became involved in the underlying offense by knowingly and willfully placing her children in a position of danger. Her intentional actions which created the danger are much different than an attempt to conceal a crime which has already been committed. It was therefore appropriate for the court to

_____

**4** The government points to evidence that Centner actually abused her children to show the requisite intent. However, Section 1B1.2(a) of the Guidelines requires a court to "[d]etermine the offense guideline section . . . most applicable to the offense of conviction (<u>i.e.</u>, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." Thus, when a defendant has pled guilty, the court can only base its choice of guideline on "the offense of conviction, facts alleged in the information or indictment, and formal stipulations to facts establishing a more severe offense." <u>United States v. McCall</u>, 915 F.2d 811, 815 (2d Cir. 1990). There were no stipulations of fact in this case.

6

apply the guidelines for aiding and abetting aggravated assault (U.S.S.G. §§ 2X2.1 and 2A2.2).**5**

Centner argues in the alternative that none of the guidelines are sufficiently analogous and therefore the catch-all provision of 18 U.S.C. § 3553(b) should apply. As Centner recognizes, however, U.S.S.G. § 2X5.1 says first that if the offense is one "for which no guideline expressly has been promulgated, apply the most analogous offense guideline." Only if there is not a "sufficiently analogous" guideline does § 3553(b) apply. As we concluded above, U.S.S.G. §§ 2X2.1 and 2A2.2 are sufficiently analogous to warrant their application to Centner's offense.**6**

Thus, we conclude that the district court's sentence met the two necessary criteria: it chose a sufficiently analogous guideline, and it kept within the state minimum and maximum penalties for the underlying crime. Centner's sentence is therefore

AFFIRMED.

_____

**5** At oral argument, we questioned whether the probation officer had correctly concluded that aggravated assault, rather than simple assault, was the properly analogous underlying crime. Centner did not raise this issue below, however, so we review it only for plain error. See United States v. Robinson, 86 F.3d 1197, 1199 (D.C. Cir. 1996). Although the probation officer did not explain his choice, we find that there is sufficient ground to support it. The indictment said that each child was abused and suffered physical injury. Because Centner pled guilty to these allegations, we do not think it was wrong for the district court to follow the probation officer's recommendation and to apply the guideline for aggravated assault. In any event, we find no plain error.

**6** Moreover, even if the district court would have applied § 3553(b), that section requires that "[i]n the absence of an applicable sentencing guideline . . . , the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders." 18 U.S.C.§ 3553(b).