UNITED STATES of America,
Plaintiff–Appellee,

v.

Nicol BOMSKI, Brian Ferguson, and Latasha T. Conley, Defendants–Appellants.

Nos. 96–3389, 96–3858 & 97–1795.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 12, 1997.

Decided Sept. 26, 1997.

Christian R. Larsen (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee in 96–3389, 96–3858 and 97–1795.

Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee in 97–1795.

Edward John Hunt (argued), Milwaukee, WI, for Nicol L. Bomski.

William J. Chandek (argued), Chandek & Associates, Brookfield, WI, for Brian Ferguson.

Martin E. Kohler, John C. Thomure, Jr. (argued), Kohler & Hart, Milwaukee, WI, for Latasha T. Conley.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

Three convicted bank robbers appeal from their sentences. Brian Ferguson and Latasha Conley, two members of the trio, also contend that the evidence was insufficient to support the convictions; Nicol Bomski, the third defendant, pleaded guilty. We begin with the latter contention, which asks us to turn an unduly favorable jury instruction into outright victory.

Bomski testified before the grand jury that Conley and Ferguson recruited her to rob a bank and that the three planned to share the proceeds. They were unable to enjoy the fruits, however, because Bomski struck while FBI agents were watching local

banks on a tip; she was arrested soon after she emerged with the loot. Bomski told the prosecutor that at trial she would invoke her privilege against compulsory self-incrimination and refuse to testify. The district judge granted an application for use immunity under 18 U.S.C. § 6002 and instructed Bomski to answer the questions. Her ensuing testimony exculpated both Conley and Ferguson of any illegal acts. The prosecutor then introduced Bomski's grand jury testimony under Fed. R. Evid. 801(d)(1), which says that a statement is not hearsay if "[t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding". Bomski's testimony before the grand jury fits this exception to the hearsay rule and was admissible as substantive evidence. Yet at the end of the trial the judge told the jury:

> Evidence that on some former occasion a witness made a statement inconsistent with his or her testimony in this case may be considered by you only in determining the credibility of a witness, and not to establish the truth of the matters contained in the prior statement.

This pattern instruction does not fit a situation such as the use of former testimony under Rule 801(d)(1)(A). It should not have been given in this case, but the judge did not notice the problem and neither side objected—the defense for obvious reasons, and the prosecutor because familiar instructions get overlooked. Now Conley and Ferguson tell us that this instruction entitles them to victory on the ground that the evidence is insufficient—for the standard is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt", *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original), and a jury willing to follow this instruction could not have found that they committed the crimes, defendants insist.

One potential response is that the instruction was so general that it would not have

dissuaded a conscientious juror from concluding that Bomski's grand jury testimony—which had been introduced for its truth, and was argued by all parties as substantive evidence—could be considered properly. A second and more fundamental ground supports the verdicts, so we need not pursue the first. It is this: the evidence *was* sufficient, and it would be absurd to allow bank robbers to go free because an instruction erroneously favorable to them was given at trial. Defendants emphasize the word "rational" in the formulation we quoted from *Jackson,* but a jury can disregard an instruction without being irrational. "Disobedient" is not a synonym for "irrational." It is preferable to emphasize the word "any" in *Jackson's* formulation, as the Court itself did. We inquire not whether *this* jury should have found the evidence sufficient, but whether *any* jury could have done so. "Just as the standard ... does not permit a court to make its own subjective determination of guilt or innocence, it does not require scrutiny of the reasoning process actually used by the factfinder—if known." 443 U.S. at 320 n. 13, 99 S.Ct. at 2789 n. 13. The hypothetical and objective nature of the inquiry is reinforced by the remainder of the quotation in the preceding paragraph, which directs attention to the "elements of the offense" rather than to the issues framed by the instructions.

■ To see this, suppose the instructions had been unduly favorable to the prosecution. Bank robbery is taking a bank's property "by force and violence, or by intimidation". 18 U.S.C. § 2113(a). Suppose the instructions in this case had omitted the force, violence, or intimidation element, and suppose further that the evidence would not have supported a conclusion that the defendants used force, violence, or intimidation. (Suppose, in other words, that the defendants committed only theft from a bank, which may be accomplished by stealth. See 18 U.S.C. § 2113(b).) The defendants would be entitled to a reversal of this conviction notwithstanding the error in the instructions; the absence of an objection to the jury instructions does not bolster the quantity of evidence available, and the absence of evidence on an element of the offense would require

reversal under the plain error doctrine. See *Johnson v. United States*, —— U.S. ——, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). To determine whether the evidence supports a conviction, an appellate court compares the proofs against the elements of the offense, not against the jury instructions. We ask whether a properly instructed jury rationally *could* have convicted, not whether an improperly instructed jury *should* have done so given its imperfect knowledge. So if the judge had told the jury in this case that only people over the age of 100 may be convicted of bank robbery, and the jury nonetheless returned guilty verdicts, we might doubt the jury's willingness to follow instructions, but we would not doubt the sufficiency of the evidence on the actual elements of the offense. Conley and Ferguson concede that a properly instructed jury could have found the evidence sufficient; that is that.

■ All three defendants believe that the judge should not have added two offense levels under U.S.S.G. § 2B3.1(b)(2)(F) for an "express threat of death". Bomski placed a bag on the counter and told the teller: "this is a bomb", followed by "give me all of your money". The judge thought that the reference to a bomb was an express threat of death—and although it may be difficult to see as an original matter how a statement such as "I have a bomb" or "I have a gun" is an *express* threat of death, we held in *United States v. Hunn*, 24 F.3d 994 (7th Cir.1994), that the statement "I have a gun" can satisfy the Guidelines' requirement. Application Note 6 tells us that an enhancement is appropriate when the offender "engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery." A reference to a gun could do this, we concluded in *Hunn*, and if that is right then a reference to a bomb likewise exposes the robber to an enhancement. A bandit may be more likely to shoot a gun than to detonate a bomb, because the explosion is apt to injure or kill everyone in the vicinity; but willingness to expose oneself to injury may persuade the teller that the robber is a madman, willing to go to any extreme if compliance is not forthcoming.

Whether a reasonable teller would draw this inference is uncertain; defendants insist that the only way to be sure is to enforce rigorously the Guidelines' distinction between express and implied threats. They ask us to overrule *Hunn*. But they do not make any arguments that *Hunn* overlooked; instead they repeat the views of the dissenting opinion, which the majority found unpersuasive. New developments at the Supreme Court or the Sentencing Commission could lead us to reconsider, but there are none. And reinterpretation of § 2B3.1(b)(2)(F) by this court could not yield a uniform treatment throughout the nation. A conflict among the circuits predated *Hunn*. Compare *United States v. Smith*, 973 F.2d 1374 (8th Cir.1992), and *United States v. Bell*, 12 F.3d 139 (8th Cir. 1993), with *United States v. Canzater*, 994 F.2d 773 (11th Cir.1993), and *United States v. Moore*, 6 F.3d 715 (11th Cir.1993). The majority in *Hunn* found the eighth circuit's approach more persuasive, the dissent the eleventh's. Two courts of appeals have lined up behind the majority in *Hunn* and one behind the dissent. Compare *United States v. Figueroa*, 105 F.3d 874, 877 (3d Cir.1997), and *United States v. Robinson*, 86 F.3d 1197, 1200 (D.C.Cir.1996), with *United States v. Alexander*, 88 F.3d 427, 430–31 (6th Cir. 1996). See also *United States v. Hogan*, 116 F.3d 442, 445 n. 2 (10th Cir.1997) (reserving the question). None of these opinions discloses a line of argument that we previously overlooked. Like *Hunn*, some of the decisions in other circuits have been rendered by divided panels. Nothing this court could do would yield harmony. Only the Supreme Court or the Sentencing Commission can do that. Therefore we adhere to our precedent, which means that the district court did not err in calculating the offense levels.

■ Bomski advances a separate objection to her offense level. She submits that her plea of guilty entitles her to a two-level reduction for acceptance of responsibility. Yet no one is *entitled* to the reduction under U.S.S.G. § 3E1.1. See *United States v. Gomez*, 24 F.3d 924, 926 (7th Cir.1994). The district court must decide whether the defendant has indeed accepted responsibility and

evinced a character trait that implies a lower risk of recidivism. Appellate review is accordingly deferential. Far from showing that she had learned her lesson and would rejoin law-abiding society, Bomski committed a new crime in the judge's presence. She contradicted her grand jury testimony. The jury obviously thought that her testimony in court was perjury, which is incompatible with acceptance of responsibility. *United States v. Strang*, 80 F.3d 1214, 1218 (7th Cir.1996). But even if her testimony at trial had been true, it *still* would have been a new crime—for 18 U.S.C. § 1623(c) makes it a felony to give inconsistent declarations under oath, and a grant of use immunity does not block a prosecution for telling lies under oath. *United States v. Apfelbaum*, 445 U.S. 115, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980). Bomski told one story to the grand jury and another to the petit jury; she swore to the petit jury that she had lied to the grand jury; one or the other is untrue, and § 1623(c) says that it doesn't matter which. She should give thanks that the prosecutor did not file charges under § 1623; a lower sentence is hardly the appropriate desert for this conduct.

■ One final contention requires only brief comment. When calculating Ferguson's criminal history, the district court included a conviction for armed bank robbery, and another for bank larceny, for which Ferguson had been sentenced on the same day. The crimes were committed on different occasions, were not part of a single scheme, and led to distinct judgments and sentences, but Ferguson insists that sentencing close in time made the convictions "related" for purposes of U.S.S.G. § 4A1.2(a)(2). Although cases may be deemed consolidated without a formal order of consolidation, see *United States v. Joseph*, 50 F.3d 401 (7th Cir.1995); *United States v. Stalbaum*, 63 F.3d 537 (7th Cir.1995), the defendant must establish that some relation among the earlier crimes justifies a lower sentence for the current offense. We can't imagine why reducing the number of times the Marshals Service had to transport Ferguson between prison cells—which was all that sentencing on the same day accomplished—justifies a lower criminal history score. It would increase sentencing disparities, the opposite of the Guidelines' objective, to act as if Ferguson had been convicted of only one of those two crimes.

AFFIRMED.