CARNES, Circuit Judge,
dissenting:
The Ex Post Facto Clause requires us to decide whether Amendment No. 552 to the sentencing guidelines clarifies the meaning of U.S.S.G. § 2B3.1(b)(2)(F), or instead changes that meaning. If the amendment only clarifies, then its application to cases like this one, which arose before its effective date, is permitted. If, however, the amendment changes the guideline’s meaning, then its application to cases that arose beforehand is barred by ex post facto principles. I agree with my colleagues about that.
Where I disagree with them is on the pivotal question of whether the amendment does change, instead of simply clarify, § 2B3.1(b)(2)(F). Although not certain that my colleagues are mistaken in their different view, I believe that the amendment only clarifies and does not change the meaning of that guideline. The reasons that persuade my colleagues to the contrary fail to convince me.
It is true, as they point out, that Amendment No. 552 modified not only the explanatory commentary but also the text of § 2B3.1(b)(2)(F) itself. But so what? The language of a guideline as well as the language of its commentary can be ambiguous. The process of clarifying the mean *1334 ing of a guideline, no less than the process of changing its meaning, can involve modification of the guideline language itself. Modification of language is, after all, the principal means by which one clarifies meaning.
Consider an example close to home. If my personal experience is a reliable guide, a judge makes numerous changes in the actual language of an, opinion in the course of editing it. Usually, those changes are not done to alter the meaning of the opinion’s holding or its reasoning, but instead are designed to clarify what is intended; most of those changes are made to prevent or resolve ambiguities. The same thing happens in the legislative process. When a dispute arises over the meaning of a provision in a statute, legislators sometimes try to clear up matters in committee reports, which are a kind of legislative commentary, but they also can and frequently do revise the actual language of the ambiguous provision itself in order to clarify its meaning. A change in the language of the provision itself does not mean its meaning has been changed; often all that has been done is to clarify the original meaning.
The same thing can and does happen with sentencing guidelines. If the language of a particular guideline is ambiguous, the best way for the Commission to resolve that ambiguity may be to modify the language of the guideline itself, not just the commentary. We should not conclude that the original intent or meaning of a guideline has been changed merely because the Commission, in the course of exercising its function of ensuring that a guideline is interpreted uniformly, chooses to resolve an ambiguity by changing the guideline language itself.
Of course, this discussion assumes there was an ambiguity in § 2B3.1(b)(2)(F) to clarify. Proof of that ambiguity is found in the division of the circuits over the meaning of the guideline. If there had been no ambiguity, there would have been no disagreement among the circuits. Where circuits reach different conclusions about the meaning of the same language, which is what happened with this guideline, then that language is ambiguous. When an ambiguity is brought to the surface and results in differing applications of the same guideline, the Commission has the authority, perhaps the duty, to clarify matters. The Commission did so in this case, explaining the purpose of Amendment No. 552, as follows:
This amendment addresses a circuit court conflict regarding the application of the “express threat of death” enhancement in § 2B3.1 (Robbery). The amendment adopts the majority appellate view which holds that the enhancement applies when the combination of the defendant’s actions and words would instill in a reasonable person in the position of the immediate victim {e.g., a bank teller) a greater amount of fear than necessary to commit the robbery. See, e.g., United States v. Robinson, 86 F.3d 1197, 1202 (D.C.Cir.1996) (enhancement applies if (1) a reasonable person in the position of the immediate victim would very likely believe the defendant made a threat and the threat was to kill, and (2) the victim likely thought his life was in peril); United States v. Murray, 65 F.3d 1161, 1167 (4th Cir.1995) (“any combination of statements, gestures, or actions that would put an ordinary victim in reasonable fear for his or her life is an express threat of death”).
U.S.S.G.App. C, amend. 552 (Nov.1997).
There was an ambiguity that gave rise to a circuit split over the meaning of the § 2B3.1(b)(2)(F) language. Most circuits addressing the language in question thought it meant something different from what this circuit did. The Commission needed to resolve the ambiguity and mend the split. It could have done so by going with either the majority or minority view. The Commission decided to adopt the majority view, and it effectuated that decision by changing the language of the guideline and the commentary to remove the ambiguity.
*1335 To be fair, there are two ways to interpret the Commission’s adoption of the majority view about the meaning of § 2B3.1(b)(2)(F). One way is that the Commission went with the majority view, because that view expresses what the Commission intended when it adopted the original language of the guideline, that is, the amendment signals that the majority of circuits which had spoken had gotten it right. The other way to interpret the amendatory action is that the majority view was not what the Commission intended to begin with, but on second thought the Commission concluded that view was the best policy result after all, and adopted it for that reason. Under that interpretation of the amendment, it was adopted to change the originally intended meaning'of the guideline, and as it happens, the change brought the meaning around to what the majority of the circuits to have spoken thought (mistakenly) the initial language had meant. How do we decide which of these two interpretations of the Commission’s action is correct?
I think the proper approach when the Commission has acted to resolve a circuit split is to presume that the Commission has carried out its duty to clarify ambiguous guideline language and has not changed its original view concerning the intended meaning of that language. That presumption should control absent some strong indication from the Commission that, in acting to resolve an ambiguity, it has changed what it originally intended the guideline to mean. Such a presumption serves the important purpose of ensuring national uniformity in application of the guidelines. Achieving uniformity is, after all, the purpose of having the Commission resolve ambiguities and mend circuit splits.
If we do not presume that amendments which resolve ambiguities and mend splits are clarifying, then courts which took the view not adopted by the Commission will often conclude, as my two colleagues have in this case, that the meaning of the guideline has been changed instead of clarified. They will do so largely because the Commission did not choose their circuit’s view. Human nature being what it is, the reasoning goes like this: We held the guideline meant A, so that is what it meant; the Commission now says the guideline means B; therefore, the Commission has changed the meaning of the guideline.
Absent a presumption that split-mending amendments are clarifying, they will fail to achieve uniformity in cases which arose before the effective dates of the amendments. Courts, like this one, that took the view the Commission rejected, will believe the true meaning of the guideline has been changed, so, they will continue to follow their contrary position. Courts that have not enshrined the mistaken view into their circuit law will more likely follow the clarified meaning. Courts that were on the prevailing side of the split certainly will follow the clarified meaning, because it is what they thought all along. Only when there are no more cases that arose before the effective date of an amendment will there be nationwide uniformity in application of the guideline in question. Thus, without a presumption that such amendments only clarify, not change, the Commission’s intent concerning the appropriate application of the guideline, the benefit of uniform application which such amendments are designed to achieve will be lost for a number of years.
Applying the presumption of clarification to this case, I do not think there is any indication, much less a strong indication, that the Commission intended Amendment No. 552 to change the meaning of § 2B3.1(b)(2)(F). The explanation the Commission gave does not state, imply, or hint that it was doing any more than clarifying the guideline to remove the ambiguity clouding the original intent behind it. After identifying the circuit split which was the motivation for amending § 2B3.1(b)(2)(F), the Commission explained that “[t]he amendment adopts the majority appellate view....” U.S.S.GApp. C, amend. 552 (Nov.1997). A fair reading of that statement is that the *1336 Commission was acknowledging the majority of the circuits had correctly understood the Commission’s original intent. The Commission did not say the majority of courts to decide the issue had misunderstood its intent and that the Commission was, upon reflection, changing its own intended view of the proper application of the guideline. Nor did the Commission otherwise indicate that the minority view of § 2B3.1(b)(2)(F) had correctly reflected the Commission’s original intent.
In amending the guideline and commentary, the Commission did not change any of the examples in the commentary, examples which illustrate the intended application of § 2B3.1(b)(2)(F). The reason those examples were not changed is that the intended application was not being changed. If the Commission had thought the amendment effected a substantive change of the guideline, it would have altered the illustrative examples in the commentary to reflect that change.
The only arguable indication that the Commission intended to effect a substantive change is that it deleted from an earlier draft of the explanation for Amendment No. 552 an explicit statement that the amendment “clarifies the Commission’s intent.” Proposed Amendment to the Federal Sentencing Guidelines, 60 Crim. L. Rep. (BNA) 2019, 2035 (Jan. 15, 1997). But the rewriting of the explanatory language and the deletion of the explicit reference to clarification does not necessarily mean that the Commission thought the amendment was for some purpose other than clarification. The explicit reference to clarification could just as easily have been deleted as redundant in view of the other language explaining that the amendment “addresses a circuit conflict” and “adopts the majority appellate view.” U.S.S.G.App. C, amend. 552 (Nov.1997). At most, the deletion of the express reference to clarification from the explanation is ambiguous and does not overcome the presumption, which should attend any amendment by the Commission in response to ambiguity in a guideline, that the amendment only clarifies the Commission’s original intent concerning the proper application of the guideline.
Finally, because the Commission’s power to clarify ambiguities in the Sentencing Guidelines is well established, a defendant cannot successfully claim, for ex post facto purposes, that he lacked “fair warning” that the Commission could clarify an ambiguous provision in a guideline in a manner unfavorable to him. The existence of the ambiguity itself provides notice that the guideline can be interpreted either way and that the Commission can resolve any difference of opinion about the matter to the defendant’s detriment. Moreover, a defendant who is adversely affected by the Commission’s decision to resolve an ambiguity and end a circuit split is not situated any differently from a defendant adversely affected by a Supreme Court decision resolving such an ambiguity. Just as there is no ex post facto problem, i.e., no lack of fair warning, when the Supreme Court resolves an ambiguity, there is none when the Commission does the same thing.
As I said at the beginning, I am not certain my colleagues are mistaken but I think they are. I would hold that Amendment No. 552, the sole purpose of which was to resolve a circuit split over the meaning of § 2B3.1(b)(2)(F), is a clarification of that guideline and not a change in its meaning. As a result, applying it to cases' that arose before the effective date of the amendment does not violate the Ex Post Facto Clause.