**UNITED STATES of America,
Appellee,**

v.

**Tristan WOLFF, Appellant.**

No. 98–3152.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1999.

Decided Nov. 2, 1999.

**38**

Jennifer Blunt, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Stephen R. Martin, II, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was Wilma A. Lewis, U.S. Attorney, John R. Fisher, Assistant U.S. Attorney, and Mary Patrice Brown, Assistant U.S. Attorney.

Before: WILLIAMS, ROGERS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

This case is here for a second time on claims of sentencing error. In *United States v. Wolff*, 127 F.3d 84 (D.C.Cir.1997) ("*Wolff I*") the court remanded for resentencing in view of the government's breaches of the plea agreement. *See id.* at 86–87. On remand, the district court sentenced Wolff to sixty-four months' incarceration and three years' supervised release on each robbery count, the sentences to run concurrently. The district court reimposed a special assessment of $100.00 under 18 U.S.C. § 3013, and again ordered Wolff to pay restitution of $122.00 to Riggs Bank and $1867.00 to Washington Federal Savings Bank.

Wolff contends the district court erred by applying a two–level enhancement under § 2B3.1(b)(2)(F) of the *United States Sentencing Guidelines Manual* (1995) ("*Guidelines*"), when the evidence failed to show an express threat of death, and by failing to consider his ability to pay before ordering restitution as required under the Victim Witness Protection Act, 18 U.S.C. § 3664(a) (1995). As clarified at oral argument, Wolff also contends, in the event this court agrees with his second claim of error, that the district court erred in delegating part of its sentencing responsibility to the probation office. Because our decision in *United States v. Robinson*, 86 F.3d 1197, 1202 (D.C.Cir.1996), is dispositive of his first claim of error, and we conclude that Wolff has failed to show that the district court plainly erred with regard to its statutory obligation to consider his ability to pay, we affirm and do not reach his unlawful delegation claim.

## I.

██ Wolff received a two-level sentence enhancement for making an express threat

of death pursuant to § 2B3.1(b)(2)(F) of the *Guidelines* on the basis of a note that he handed to a bank teller stating: "give me all your big bills, $100s, $50s, and $20s, I have a gun. I will kill people." We see no merit in Wolff's argument that this statement did not provide sufficient basis for sentencing enhancement, as we fail to see any material difference between the note used by Wolff in the instant case and the demand note in *Robinson* that stated "I'll shoot somebody in here now." *Robinson,* 86 F.3d at 1202. Each was an express threat of death within the meaning of § 2B3.1(b)(2)(F) of the *Guidelines.*[1]

In *Robinson,* the court explained that to qualify for this enhancement it is sufficient that a reasonable person in the position of the immediate victim of the robbery would "(1) very likely [have] believed that the robber made a threat and that the threat was to kill and (2) likely thought that his or her life was in peril thereby experiencing 'significantly greater fear' than the intimidation required to commit robbery." 86 F.3d at 1202. The court left open "the possibility that a court may enhance a sentence even if an ordinary person would be placed in fear for someone else's life." *Id.* at 1203. Wolff contends that the statement at issue here could not reasonably have put the teller in fear for her life because it referred only to "people in general." Wolff maintains that *Robinson* is not dispositive as to such "general" statements.[2] Yet, from the statement of what are sufficient elements for enhancement in *Robinson,* it necessarily follows that the bank teller in the instant case could reasonably believe she was included among the "people" Wolff was threatening to kill. *See United States v. Murray,* 65 F.3d 1161, 1166–67 (4th Cir.1995). The absence of the word "teller" in the note can hardly be dispositive when the context of an ongoing robbery is considered. This was not an innocent encounter; the threat in the note enhanced the intimidation that robbery alone would cause; the teller was in the immediate chain of custody of the money that Wolff sought to take from the bank. Moreover, the Guidelines would not appear to require that the threat be specifically directed to a particular person or specific target. In any event, under the circumstances, a reasonable teller could easily infer from the context of the note that the threat to kill "people" included her.

Much like the Ninth Circuit in *United States v. Strandberg,* 952 F.2d 1149, 1151–52 (9th Cir.1991), we conclude that the statement by Wolff was equivalent to the note in *Robinson. See also United States v. Figueroa,* 105 F.3d 874, 879–80 (3d Cir. 1997); *United States v. Robinson,* 20 F.3d 270, 276–77 (7th Cir.1994); *United States v. Bell,* 12 F.3d 139, 139–40 (8th Cir.1993).

Just as a reasonable teller receiving a note from a bank robber would very likely infer that "shoot" means "kill," a reasonable teller would also probably infer that a threat to kill "somebody in here" referred to him. Indeed, in the highly-charged circumstances of a rob-

---

1. Application note 6 to the commentary to § 2B3.1 of the Guidelines states:

   An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money or you are dead" would constitute an express threat of death. The court should consider that the intent of the under-

   lying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, significantly greater fear than that necessary to constitute an element of the offense of robbery.

   *Guidelines* § 2B3.1 comment, n.6.

2. Wolff suggests that *Robinson* left open, for example, the question of whether statements such as "I have a gun" and "I will shoot somebody out here" are statements to which § 2B3.1(b)(2)(F) applies.

bery, we think that the threat to "shoot somebody in here" is practically indistinguishable from the threat to "shoot you."

*Robinson,* 86 F.3d at 1202. Therefore, the district court did not err in enhancing Wolff's sentence under § 2B3.1(b)(2)(F).

## II.

■ The Victim Witness Protection Act, 18 U.S.C. §§ 3663–3664 (1995), requires that, prior to ordering restitution, the district court "shall consider the amount of loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a) (1995).[3] Wolff contends for the first time on appeal that the district court failed to consider his ability to pay restitution. Because our review is for plain error, Wolff must show not only that the district court erred but that he suffered prejudice as a result. *See United States v. Bapack,* 129 F.3d 1320, 1327 (D.C.Cir.1997); *United States v. Thompson,* 113 F.3d 13, 15 (2d Cir.1997); *United States v. Olano,* 507 U.S. 725, 732–34, 736, 113 S.Ct. 1770, 1776–79, 123 L.Ed.2d 508 (1993). Even under our modified view of plain error in sentencing, *see United States v. Saro,* 24 F.3d 283, 287–88 (D.C.Cir.1994), *cert. denied,* 519 U.S. 956, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996), Wolff has not met his burden.

At his original sentencing, the district court ordered Wolff to pay restitution of $122.00 to Riggs Bank and $1,867.00 to Washington Federal Savings Bank. At the sentencing hearing, the district court indicated that it had considered the infor-

mation in Wolff's presentence report. That report concluded that Wolff did not currently have the ability to pay a fine, restitution, or the cost of supervision or incarceration. But the report also stated that Wolff was 30 years old at the time of sentencing in 1996, had no dependents, was in good mental and physical health, had a Bachelor of Science degree from Dolgealflea Polytechnic in England, had previously been employed at a local business for seven years earning approximately $500 weekly, and had produced award-winning movie videos. Wolff does not dispute the accuracy of this information, nor does he dispute that the district court referenced the original judgment at his resentencing.

■ Clearly, under the statutory mandate, the district court could properly take into account the defendant's educational level, employable skills, and financial status, including family cost-of-living expenses upon release from prison and other obligations. Consideration of the statutory factors is demonstrated when a district court indicates expressly at some point prior to ordering a defendant to pay restitution that the court has considered the defendant's financial situation and has concluded, in light of identified evidence or uncontested proffers, that the defendant has the ability to pay. A district court's consideration of a defendant's ability to pay also may be demonstrated implicitly by its adoption of the explained conclusion in the presentence report, or through some other statement by the court indicating in more than a perfunctory manner that it has considered the defendant's financial situation. *See Rezaq,* 134 F.3d at 1141; *Bapack,* 129 F.3d at 1328.

---

**3.** We apply the statute in effect at the time of the criminal conduct, as both parties agree, in light of the court's decisions that application of the later enacted Mandatory Victims Restitution Act of 1996, Title II, Subtitle A of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (codified at 18 U.S.C. §§ 3663–3664 (1996)),

which eliminated the requirement that the district court consider the defendant's ability to pay before ordering restitution in a case like this, 18 U.S.C. § 3664(f)(1)(A) (1996), would raise ex post facto concerns. *See United States v. Rezaq,* 134 F.3d 1121, 1141 n. 13 (D.C.Cir.1998); *Bapack,* 129 F.3d at 1327 n. 13.

■ Looking at the record, *see, e.g., Rezaq,* 134 F.3d at 1141, it is sufficiently clear, albeit just barely, by cobbling together statements at various points in Wolff's sentencing hearings, that there was no plain error.[4]

First, and foremost, the district court's remarks at sentencing indicate that it had reviewed the presentence report prior to imposing sentence. This alone can suffice to show that the district court considered the defendant's ability to pay. *See Bapack,* 129 F.3d at 1327; *Davis,* 117 F.3d at 464; *United States v. Castner,* 50 F.3d 1267, 1278 (4th Cir.1995); *United States v. Mizrachi,* 48 F.3d 651, 657 (2d Cir.1995); *United States v. Osborn,* 58 F.3d 387, 389 (8th Cir.1995); *United States v. Nelson,* 5 F.3d 254, 258–59 (7th Cir.1993), *cert. denied,* 510 U.S. 1098, 114 S.Ct. 937, 127 L.Ed.2d 228 (1994). At the end of Wolff's first sentencing hearing, the district court referenced the findings in the report with regard to the amount of restitution due each victim bank, and at his resentencing hearing, the district court read from and paraphrased its discussion of restitution at the first sentencing hearing. Thus, in amending the restitution amount suggested in the presentence report to reflect money already recovered by one of the victim banks, the district court remarked "I can only deal with the information that I have from the presentence report. . . ." Furthermore, in the judgment imposing the restitution on Wolff, the district court indicated that it had adopted the factual findings of the presentence report.

It might also be said that the district court did not accept such evidence at face value, for it specifically stated that, as of the time of sentencing, the amount of Wolff's prison pay "probably is meager."

Although a defendant could have other financial resources, the district court's remark is some indication that the court was considering Wolff's financial status. In addition, at the conclusion of Wolff's first sentencing hearing, the district court stated that it had not "been able to find that there has been any ability to pay." Although this statement is unclear, it does suggest that the district court recognized that it was obligated to consider Wolff's ability to pay if it was going to impose financial conditions as part of the sentence, or as the government suggests, the statement may have referred to Wolff's inability to pay a fine, cost of imprisonment, or supervision.

Considering the burden on Wolff to show error by the district court in ordering restitution, *see* 18 U.S.C. § 3664(d), we conclude that Wolff cannot show error that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See Olano,* 507 U.S. at 736, 113 S.Ct. at 1779. Although at oral argument he emphasized that he was represented by court-appointed counsel, and the presentence report noted a large debt, namely a loan of $8,000 from a friend, and concluded, based in part on Wolff's statement that he had no assets, that he was financially unable to pay restitution, the district court was not required to reach the same conclusion. The presentence report also included information about Wolff's somewhat remarkable educational and working history that could reasonably cause the district court to conclude that Wolff had the ability to earn a decent living and then some. The court could reasonably view a personal loan in a different light than a commercial loan with due dates and clear legal conse-

---

4. Although the district court did not make express findings as to Wolff's ability to pay restitution, the statute does not require as much. *See Bapack,* 129 F.3d at 1328. *Accord United States v. Davis,* 117 F.3d 459, 463 (11th Cir.1997); *United States v. Sanders,* 95 F.3d 449, 456 (6th Cir.1996); *United States v. Lavin,* 27 F.3d 40, 42 (2d Cir.1994); *United States v. Rogat,* 924 F.2d 983, 986 (10th Cir.

1991); *United States v. Ryan,* 874 F.2d 1052, 1053 (5th Cir.1989). Additionally, we note that while express findings are not required, a clear indication on the record of the district court's consideration of the statutory factors would facilitate appellate review; in this regard, counsel on both sides could assist the district court. *Cf. United States v. Dudley,* 104 F.3d 442, 447 (D.C.Cir.1997).

quences upon default. Wolff's contention at oral argument that the district court's reference at sentencing to avoiding double recovery by a victim bank indicates that it was applying the wrong statute, and therefore was unaware of the need to consider his ability to pay, fails to demonstrate plain error; not only did the district court refer to the need to find an ability of pay, neither the government nor the 1995 Act or its successor, *see supra* n. 3, suggest the propriety of such recovery.

Accordingly, because Wolff's challenge to the enhancement of this sentence under § 2B3.1(b)(2)(F) of the *Guidelines* is meritless and he has failed to demonstrate that the district court plainly erred by not considering his ability to pay restitution, we affirm the judgment of conviction.